**Harrison DIKE, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 00SC332.**

Supreme Court of Colorado, En Banc.

July 2, 2001.

Drew Johnroe, P.C., Drew Johnroe, Steamboat Springs, CO, Attorney for Petitioner.

Paul McLimans, District Attorney, Bryan Garrett, Deputy District Attorney, Hot Sulphur Springs, CO, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

In this appeal on certiorari from the district court pursuant to section 13–6–310(4), 5 C.R.S. (2000), we determine that the county court possessed jurisdiction to set aside its initial dismissal order because it did so prior to expiration of the thirty-day time period

under Crim. P. 37(a) for the prosecution's appeal of the dismissal to the district court.[1]

The county court had granted the defendant's motion to dismiss the charges because the defendant had initially elected a blood test, but then elected a breath test. The prosecution brought our decision in *People v. Shinaut,* 940 P.2d 380 (Colo.1997),[2] to the court's attention through a motion for reconsideration. Upon reviewing that case, the county court set aside its dismissal order and reconsidered the defendant's suppression motion, denying it. The defendant was subsequently convicted. We affirm the judgment of conviction.

I.

On the afternoon of October 1, 1998, petitioner Harrison William Dike (Dike) was involved in a two-vehicle accident in Steamboat Springs, when the car he was driving collided with a parked car occupied by two people. A Steamboat Springs Police Department code enforcement officer (CEO) on bike patrol saw Dike staggering toward his car just prior to the accident. The CEO noticed that Dike was having trouble with his balance and coordination. As Dike entered his car, the CEO called dispatch to inform the police that he believed he was witnessing an intoxicated driver getting into a vehicle. The collision occurred while the CEO was still on the radio.

Dike parked the car and got out right after the collision, and the CEO immediately started following Dike and calling to him to stop. He approached Dike and asked to see some identification. At that point, a Steamboat Springs police officer approached and, likewise noting the lack of coordination and balance and the smell of alcohol, gave Dike a field sobriety test, which led him to believe Dike was intoxicated. The officer then took Dike into custody.

---

1. We granted certiorari on the following issue: "Whether the trial court erred in considering and granting the People's Motion to Reconsider without notice and hearing after 20 days had passed from final judgment."

2. In *Shinaut,* we held that such a change of election should not be allowed under the statute, but that the results of a blood alcohol test actually administered to the defendant should not be suppressed. 940 P.2d at 384.

The officer informed Dike of the Colorado express consent law, § 42–4–1301(7), 11 C.R.S. (2000), which allows a suspect to elect either a breath test or a blood test for blood alcohol content (BAC) when a police officer has grounds for believing that the suspect has been operating a vehicle while intoxicated. He further informed Dike that if Dike refused to take a test, his license would be revoked for one year. § 42–2–126(2)(a)(II), 11 C.R.S. (2000). Dike allegedly told the officer that he wanted whichever test would cause the officer the most problems. Upon being told that the officer could not choose a test for him, Dike elected to take a blood test.

The officer explained to Dike that he would have to fill out some forms before taking the blood test, both for the hospital and lab (release of liability), and for the police. On the way to the hospital for the test, Dike allegedly became recalcitrant, told the officer that he wanted to make the officer's life miserable, and told him that he was not going to sign any forms or cooperate in any way. The officer told Dike that he would consider Dike's lack of cooperation to constitute a refusal of a BAC test, which would result in Dike's driver's license being revoked. Dike said he did not care, and still insisted that he would refuse to sign the forms at the hospital. The officer, as promised, took Dike's statements as a refusal to take the blood test, and thereafter transported Dike to the Routt County Jail instead of the hospital.

At the jail, the officer again reminded Dike that he would lose his driving privileges for electing a blood test and then refusing it, and offered Dike another opportunity to take a BAC test. Dike continued to refuse to take any BAC test. Before the officer turned Dike over to the sheriff's office for processing, however, Dike decided he would take a breath test. The test showed a BAC of .288, almost three times the legal limit in Colorado. Dike's driving privileges were revoked, see § 42–2–126(2)(a)(I), and he was charged with careless driving, § 42–4–1402, driving under the influence of alcohol (DUI), § 42–4–1301(1)(a), and driving with a BAC over .10 (DUI *per se*), § 42–4–1301(2)(a).

On February 1, 1999, Dike filed a motion he denominated a "Motion to Suppress Evidence; Motion to Dismiss" with the Routt County Court, alleging that the police officer's administration of a breath test instead of the blood test he originally elected violated the express consent law and relevant case law. After a hearing on March 24, 1999, the county court, citing *Lahey v. Department of Revenue*, 881 P.2d 458 (Colo.App.1994), and *People v. Gillett*, 629 P.2d 613 (Colo.1981), granted Dike's motion to dismiss without prejudice. At that time, neither of the parties nor the trial court was aware of our opinion in *Shinaut*, which addressed a situation analogous to the circumstances here. In that case, we held that the results of a BAC test should not be suppressed even though the defendant was allowed to take a different test from the one originally chosen.

On April 13, 1999, twenty days after the dismissal of the charges against Dike, the prosecution filed a "Motion to Reconsider with Authority."[3] The prosecution mailed Dike's attorney a copy of the motion on the same day. In this motion, the prosecution presented the court with two "new" cases.[4] The county court granted the prosecution's motion and reinstated the charges against Dike on April 22, 1999. The county court determined that it had jurisdiction to correct its legal conclusions prior to expiration of the thirty-day period for filing an appeal with the district court under Crim. P. 37.

The day after the county court set aside its dismissal order, Dike filed an opposition to the prosecution motion to reconsider on the basis that the fifteen-day period for a new trial motion under Crim. P. 33(c) had expired before the prosecution filed its motion to reconsider. The county court thereafter ordered briefing and heard argument from the parties. On May 17, 1999, the court refused

---

3. In its motion to reconsider, the prosecution requested the court to act by April 21, in order to preserve adequate time in which to appeal the case to the district court, if necessary.

4. The cases cited were *Shinaut* and *Poe v. Department of Revenue*, 859 P.2d 906 (Colo.App.1993). The People have since conceded that *Poe* was not "new" authority, as it was brought to the court's attention at the March 24 hearing.

to reinstate its dismissal order. Dike waived his right to a jury trial and was convicted of all counts following a bench trial. The district court rejected Dike's contention that the county court had lost jurisdiction to set aside its dismissal order, and determined that the county court had correctly applied the law under *Shinaut.* We agree with the district court.

## II.

We hold that the county court possessed jurisdiction to set aside and correct its initial order dismissing this case. This is so because the county court retained jurisdiction to rescind its initial dismissal until the time for appeal under Crim. P. 37(a) had expired. Here, the court issued its corrective order one day before expiration of the time for filing of the prosecution's appeal.

### A.

### Absence of Specific Procedure

The question on certiorari is whether the trial court had jurisdiction to reconsider its dismissal order, so as to correct its erroneous conclusion of law, before the time for taking a prosecution appeal of the dismissal order had run. No provision of the criminal rules specifically authorized the prosecution's motion to reconsider the dismissal order. Under *Shinaut,* the court should have proceeded to rule on the defendant's suppression motion, denying it. Instead, the court dismissed the case. When the county court suppresses evidence, the prosecution must take an interlocutory appeal to the district court within ten days, as provided in Crim. P. 37.1(b).

Here, the original Register of Actions in the record of this case contains an entry for March 24, 1999 reading "Motion granted case dismissed" in reference to the motions heard on March 24, 1999. Because of the dismissal order, taking an interlocutory appeal was not a viable option,[5] and the prosecution was

faced with filing an appeal to correct the erroneous dismissal order.

Before the county court lost jurisdiction over the case, it realized that, based on our decision in *Shinaut,* it should have denied the motion to suppress, instead of dismissing the case. Dike first elected a blood test, then refused to take any test, then agreed to take a breath test. The express consent law does not allow a driver to change his or her election of a test. § 42–4–1301(7)(a)(II)(B) (stating that "If a person elects either a blood test or a breath test, such person shall not be permitted to change such election"). The "arresting officer has a corresponding duty to implement the driver's election without allowing the driver to change such election." *Shinaut,* 940 P.2d at 383. However, when noncompliance with a statute does not violate the defendant's constitutional rights, the suppression of evidence derived from such error may not be appropriate. *Id.* at 384.

In *Gillett,* 629 P.2d at 619, we held that the dismissal of charges against a DUI defendant was proper where the express consent law was violated, in that the defendant requested a BAC test but no test was actually administered. Dismissal was appropriate there because of the need to protect a defendant's constitutional rights to access possibly exculpatory evidence. *Id.* In *Shinaut,* the defendant first elected a blood test, then changed his election to a breath test. 940 P.2d at 381. Distinguishing *Gillett,* we held that whereas in *Gillett,* the violation of the express consent law resulted in a constitutional violation that demanded dismissal of the case, the "technical violation" of the express consent law in Shinaut's case did not. *Id.* at 383–84. We held that "[e]rroneous accommodation of a citizen's request by a police officer does not warrant the sanction of excluding evidence," and therefore, "evidence [can] be admitted … if the trial court [is] satisfied that the validity and reliability of the particular test, and its results, [has] been established." *Id.* at 384.

---

5. In both the March 24, 1999 order and the Register of Actions, the court did not distinguish Dike's motion to suppress from the motion to dismiss, but simply dismissed the case. We note that the trial court need not have dismissed the

case in order to suppress the breath test evidence, and had the court only suppressed that evidence, the People would have been held to the mandate of Crim. P. 37.1, which states the procedures for interlocutory appeals.

Thus, had the trial court known of *Shinaut*—as it said in its order setting aside the dismissal order and denying the motion to suppress—it would have denied both parts of Dike's motion in the first instance.

■ Dike urges us to apply Crim. P. 33(c), which provides that a "motion for a new trial other than on the ground of newly discovered evidence shall be filed *within fifteen days* after verdict or finding of guilt or within such additional time as the court may fix during the fifteen-day period." (Emphasis added.) However, by its plain wording Crim. P. 33 applies to a motion by a "party claiming error in the trial of any case." Crim. P. 33(a). No trial had occurred in the case before us; rather, the prosecution was seeking to have the trial court reconsider the dismissal order while it still had jurisdiction. The time limit for post-trial motions under Crim. P. 33 does not apply to pre-trial motions.

■ Alternatively, Dike asserts that the prosecution failed to take an interlocutory appeal from the trial court's suppression order within ten days after its entry, as provided in Crim. P. 37.1(b). However, it was the county court's grant of Dike's request for dismissal that presented the unusual problem here. A judgment of dismissal is a final, appealable order. *See People v. Hall*, 999 P.2d 207, 215 (Colo.2000). Interlocutory appeals are from rulings that dispose of a part but not the entirety of a case. *People v. Gallegos*, 946 P.2d 946, 950 (Colo.1997). Because the county court entered a dismissal order rather than just a suppression order, interlocutory appeal was no longer available as a remedy to the prosecution.

### B.

### Correction of the County Court's Order

The basis of the reconsideration motion was that controlling precedent, our *Shinaut* decision, required a result contrary to the trial court's decision. As stated in Crim. P.

2, the criminal rules "are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Crim. P. 47 provides:

> An application to the court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court permits it to be made orally. It shall state the grounds upon which it is made and shall set forth the relief or order sought. It may be supported by affidavit.

■ Crim. P. 57(b) provides that, in absence of an applicable provision, the court may proceed "in any lawful manner not inconsistent with [the] Rules of Criminal Procedure."[6] One of the basic duties of an attorney, often said in reference to the attorney being "an officer of the court," is that counsel will bring to the court's attention applicable legal precedent. Crim. P. 47 is a vehicle for bringing to the court's attention legal precedent that bears on the validity of the court's legal conclusions.

Here, the prosecution's motion to reconsider was filed within the time for filing an appeal with the district court under Crim. P. 37(a); consequently, the county court had not lost jurisdiction over the case. *See People v. Dillon*, 655 P.2d 841, 844 (Colo.1983) (stating that "once an appeal has been perfected, the trial court has no jurisdiction to issue further orders"); *People v. Albaugh*, 949 P.2d 115, 116 (Colo.App.1997).

We reject Dike's contention that the trial court cannot correct its legal conclusions during the period for taking an appeal when it becomes aware, sua sponte or on motion by a party, of controlling legal precedent of which it was unaware when it dismissed the case. No rule of law provides that the sole means for addressing a trial court's error of law is an appeal when the court still retains jurisdiction over the case. Crim. P. 47 and 57(b)

---

6. Crim. P. 57(b) states in full:
   If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these Rules of Criminal Procedure or with any directive of the Supreme Court regarding the conduct of formal judicial proceedings in the criminal courts, and shall look to the Rules of Civil Procedure and to the applicable law if no Rule of Criminal Procedure exists.

are designed to afford courts the ability to address an issue unforeseen by the Rules of Criminal Procedure, such as here.

### III.

Accordingly, we uphold the judgment of the district court affirming the county court's entry of the judgment of conviction.

Justice KOURLIS does not participate.