Glenn TURBYNE, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 06SC21.

Supreme Court of Colorado,
En Banc.

Jan. 16, 2007.

Rehearing Denied Feb. 5, 2007.

Isaacson Rosenbaum, P.C., Shawn Gillum, William W. Hood III, Blain D. Myhre, Denver, Colorado, Attorneys for Petitioner.

Carol Chambers, District Attorney, Eighteenth Judicial District, Paul Wolff, Chief Deputy District Attorney, Jacob Edson, Dep-

uty District Attorney, Aurora, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this case to review the Arapahoe County District Court's judgment reinstating charges of driving under the influence of alcohol and driving with excessive alcohol content in breath.[1] The Arapahoe County Court had dismissed those charges against Petitioner, Glenn Turbyne ("Turbyne"), for failure of the arresting officer to administer the requested blood test Turbyne selected under Colorado's express consent statute (formerly known as the "implied consent law"), section 42–4–1301.1, C.R.S. (2006).

The arresting officer attempted to procure administration of the blood test according to police department protocols for response by a private paramedic service or the fire department, but was not successful due to weather-related delays and a high call volume. Upon determining that he could not obtain a blood test within the required two hour period, the arresting officer asked Turbyne to consent to a breath test. § 42–4–1301.1(2)(a)(III), C.R.S. (2006) (requiring a chemical test within two hours of driving). Turbyne refused. The officer advised Turbyne that he could lose his driver's license if he did not consent to the breath test. Turbyne then agreed to submit to the breath test, which demonstrated an alcohol level more than twice the legal limit.

We uphold the district court's order reinstating the charges against Turbyne. The police department had an adequate protocol in place for administering the requested blood test, but the arresting officer could not obtain its performance within the required two hour period because of extraordinary circumstances beyond his control that includ-

ed weather-related delays and a high call volume. Accordingly, the county court abused its discretion by dismissing the charges. However, we order suppression of the breath test results because they resulted from an invalid consent to search, due to the arresting officer's erroneous and coercive advice to Turbyne that he could lose his license by not submitting to a chemical test he had not selected.

## I.

Around 1:30 a.m. on April 29, 2005, Deputies McCauley ("the arresting officer") and Zachman responded to a report that a car was stopped in the middle of an intersection. The deputies approached the vehicle and saw Turbyne passed out in the driver's seat. After waking Turbyne up, the arresting officer saw that he had bloodshot, watery eyes and smelled the odor of an alcoholic beverage on his breath. The officer asked Turbyne to perform voluntary roadside sobriety tests. Turbyne agreed. He did not perform the tests satisfactorily. The arresting officer then placed Turbyne under arrest for suspicion of driving while under the influence of alcohol.

After placing Turbyne under arrest, the officer provided him with the option of taking either a breath or blood test pursuant to Colorado's express consent law. § 42–4–1301.1(2)(a)(I), C.R.S. (2006). Turbyne chose a blood test. The arresting officer contacted police dispatch to request that a paramedic meet them at Aurora Detox to perform the blood draw. The police department had a protocol in place whereby a private ambulance service or the fire department would respond with a person trained to administer blood draws.

After waiting at Detox for approximately one hour, the arresting officer again contact-

1. The issues for certiorari were stated as follows:
 1. Whether the district court erred when it reversed the county court and ruled that good cause for noncompliance with a driver's request for a blood test under the Express Consent Law means a factual situation that the officer did not create, rather than the law enforcement system as a whole.

2. Whether the district court erred when it engaged in a de novo review of the operative facts to find an exceptional circumstance that it concluded amounted to good cause for noncompliance with Mr. Turbyne's request for a blood test and Colorado's Express Consent Law.

ed dispatch to obtain the blood draw. Dispatch advised the officer that weather conditions and a high call volume prevented a timely response. Although there were several hospitals in the area, the arresting officer did not contact them because he knew from past experience that they would not perform blood draws unless an accident or an injury was involved.

The arresting officer explained to Turbyne that a blood test was unavailable and offered a breath test instead. Turbyne repeated his request for a blood test. The arresting officer repeated that Turbyne could take a breath test. Turbyne refused. The officer then told Turbyne that he could lose his license if he did not submit to a breath test. Turbyne then submitted to the breath test.

The breath test analysis measured Turbyne's breath alcohol content as .184, more than twice the legal limit. Accordingly, the arresting officer issued Turbyne a summons and complaint for Driving a Vehicle while Under the Influence of Alcohol and Driving a Vehicle with Excessive Alcohol Content in Breath pursuant to sections 42–4–1301(1)(a) and (2)(a), C.R.S. (2006).

Turbyne filed a motion in county court to suppress the results of the breath test. He also appeared at a motor vehicle license revocation hearing to contest loss of his license. The administrative hearing officer dismissed the revocation proceeding upon determining that the police did not have good cause for not complying with Turbyne's selection of the blood test.

In connection with an evidentiary hearing before the county court, Turbyne moved for dismissal of the charges. The county court found that the circumstances the arresting officer faced in this case were beyond his control: "Well, the Court finds that what you encountered in this case is certainly beyond the officer's control, you can't get anybody to come help you and take the blood test, right?" Nevertheless, the county court ruled that this "isn't good enough and it's because there has to be a legal excuse, it can't just be

a factual excuse. And, unfortunately for you, you are stuck with facts. Facts as you see them out on the street."

The county court then dismissed the charges, for the same reason as the hearing officer had dismissed the license revocation proceeding, that the police lacked good cause for not complying with Turbyne's selection of the blood test.

In its appellate capacity, the district court reversed the county court's order of dismissal.[2] The district court concluded that the arresting officer had good cause for not complying with Turbyne's selection of the blood test. The district court reached this result by agreeing with the trial court's finding that the circumstances were beyond the control of the arresting officer, while disagreeing with the trial court's legal conclusion based upon that finding:

> The trial court determined that no "factual" situation would support a finding of good cause. The trial court interpreted *Riley* to require a "legal" excuse.

> This Court cannot agree with the trial court's application of the law to the evidence in this case and finds that the trial court applied an erroneous legal standard to the evidence. Riley states that "good cause" would generally require a substantial reason amounting in law to a legal excuse for failing to perform an act required by law, and might include circumstances beyond the officer's control. *Riley* at 221. The use of the term "circumstances" does not mean "legal circumstances." That term must be interpreted in the context in which it is used. "Circumstances beyond the officer's control" means a factual situation which the officer did not create. To read this direction from the Colorado Supreme Court in any other way would lead to the conclusion that a phlebotomist must be on duty with every law enforcement agency 24 hours a day, seven days a week. This reading simply strains the "good cause" exception recognized by the *Riley* court.

---

**2.** Section 13–6–310(1), C.R.S. (2006) provides that "[a]ppeals from final judgments and decrees of the county courts shall be taken to the district court for the judicial district in which the county court entering such judgment is located." Pursuant to C.A.R. 49(a)(1), we exercise our discretion to grant certiorari to review a district court's final judgment.

The district court did not address whether the breath test had been validly administered in lieu of the blood test.

## II.

We uphold the district court's order reinstating the charges against Turbyne. The police department had an adequate protocol in place for administering the requested blood test, but the arresting officer could not obtain its performance within the required two hour period because of extraordinary circumstances beyond his control that included weather-related delays and a high call volume. Accordingly, the county court abused its discretion by dismissing the charges. However, we order suppression of the breath test results because they resulted from an invalid consent to search, due to the arresting officer's erroneous and coercive advice to Turbyne that he could lose his license by not submitting to a chemical test he had not selected.

## A.

### Standard of Review

 When construing a statute, our primary purpose is to ascertain and effectuate the intent of the General Assembly. *People v. Weiss*, 133 P.3d 1180, 1184 (Colo.2006). First, we look to the plain and ordinary meaning of the statutory language to determine the legislative intent. *People v. Cross*, 127 P.3d 71, 73 (Colo.2006). "If the statutory language is clear, we apply the plain and ordinary meaning of the provision." *Weiss*, 133 P.3d at 1184. We do not add words to the statute or subtract words from it. *Colo. Dep't of Revenue v. Hibbs*, 122 P.3d 999, 1004 (Colo.2005); *Colo. Dep't of Labor & Employment v. Esser*, 30 P.3d 189, 196 (Colo.2001).

## B.

### Colorado's Express Consent Law

The statute provides that a police officer with probable cause to believe that the driver has committed an alcohol-related offense may invoke Colorado's express consent law. This law consists of a number of provisions. Those relevant to the case before us include that (1) the driver expressly agrees to select and complete either a blood or breath test upon request of the police officer, (2) the driver may select which test to take, (3) the driver's refusal to select and complete the selected test results in revocation of the driver's license for a year, and (4) the driver must submit to the test selected and may not change to a different test.

Specifically, the provisions applicable to this case are:

(1) *Any person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state shall be deemed to have expressed such person's consent to the provisions of this section.*

(2)(a)(I) Any person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of such person's breath or blood for the purpose of determining the alcoholic content of the person's blood or breath when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI, DUI per se, DWAI, habitual user, or UDD. *Except as otherwise provided in this section, if a person who is twenty-one years of age or older requests that said test be a blood test, then the test shall be of his or her blood; but, if such person requests that a specimen of his or her blood not be drawn, then a specimen of such person's breath shall be obtained and tested . . .*

(II) If a person elects either a blood test or a breath test, *such person shall not be permitted to change such election, and, if such person fails to take and complete, and to cooperate in the completing of, the test elected, such failure shall be deemed to be a refusal to submit to testing.*

(III) If a law enforcement officer requests a test under this paragraph (a), *the person must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving.*

§§ 42–4–1301.1(1), (2)(a)(I)–(III), C.R.S. (2006)(emphasis added).

(1) *If a person refuses* to take, or to complete, or to cooperate with the completing of any test or tests as provided in section 42–4–1301.1, *the person shall be subject to license revocation pursuant to the provisions of section 42–2–126* . . . .

§ 42–4–1301.2(1), C.R.S. (2006)(emphasis added).

(2)(a) *The department shall revoke the license of any person upon its determination that the person:*

(II) *Refused to take or to complete, or to cooperate in the completing of, any test* or tests of the person's blood, breath, saliva, or urine as *required by section 42–4–1301.1(2)*, 18–3–106(4), or 18–3–205(4), C.R.S.

§ 42–2–126(2)(a)(II), C.R.S. (2006).

The provisions of this statute are plain. The driver must select between a blood or a breath test when a police officer, upon probable cause, invokes the express consent law in connection with an alcohol-related offense. The driver must cooperate with taking and completing the selected test within two hours of driving. If the driver does not cooperate with taking and completing the test he or she selected within those two hours, such action constitutes a refusal that results in the revocation of the driver's license for one year.

Although the statutory provisions use the phrase "test or tests," the administrative sanction of a year's license revocation refers back to those "required" by section 42–4–1301.1(2)(a)(I). § 42–2–126(2)(a)(II). In turn, the plain language of section 42–4–1301.1(2) requires the driver to take only the type of chemical test he or she initially selected, either blood or breath, when the police officer invokes the express consent law: "if a person who is twenty-one years of age or older requests that said test be a blood test, then the test shall be of his or her blood; but, if such person requests that a specimen of his or her blood not be drawn, then a specimen of such person's breath shall be obtained and tested." § 42–4–1301.1(2)(a)(I).

There is no provision in the statute that requires the driver to take the alternative type of test if the one he or she selected cannot be made available or completed for any reason beyond the driver's control. Thus, the administrative sanction of one-year's license revocation is restricted to the driver's refusal to select or to complete one of the two types of tests when the officer invokes the express consent law.

Had the legislature wanted or intended to allow a police officer to require the driver to take the alternative form of test, if the one selected did not become available for any reason, it could have said so. Because the statute does not expressly or necessarily imply that a driver must submit to the alternative form of test or lose his or her license, we cannot supply the missing language and must respect the legislature's choice of language. *Hibbs*, 122 P.3d at 1004; *Esser*, 30 P.3d at 196.

When the driver selects the blood test, it must be performed only by a physician, a registered nurse, a certified paramedic, qualified emergency medical technician, or a person whose normal duties include withdrawing blood samples under the supervision of a physician or registered nurse. § 42–4–1301.1(6), C.R.S. (2006). The statute does not require that police officers who invoke the express consent law also be physicians, registered nurses, certified paramedics, qualified emergency medical technicians, or persons whose normal duties include withdrawing blood samples under the supervision of a physician or registered nurse. Thus, the statute anticipates that the arresting officer will proceed to obtain the services of such a person to complete the blood test within the required two hour period.

## C.

### Sanctions for Improper Police Noncompliance

The statute does not specify sanctions for police noncompliance with the express consent law; it specifies only a sanction upon drivers who refuse to consent in accordance with the statutory terms—loss of the driver's license for one year upon administrative de-

termination that the driver failed to select and complete the type of chemical test the driver specified upon the arresting officer's invocation of the statute.

■ The primary purpose of the express consent statute is to facilitate cooperation between citizens and police officers in the enforcement of highway safety. *Riley v. People,* 104 P.3d 218, 220 (Colo.2004). Another objective of the statute is to "obtain scientific evidence of the amount of alcohol in the bloodstream in order to curb drunk driving through prosecution for that offense." *Zahtila v. Motor Vehicle Div., Dep't of Revenue,* 39 Colo.App. 8, 10, 560 P.2d 847, 849 (1977). To achieve these purposes, the statute creates mutual rights and responsibilities for the arresting officer and the driver. *Riley,* 104 P.3d at 220. The mutual obligations created by the statute allow a driver to obtain a chemical test for exculpatory purposes and the police to obtain a test to inculpate the driver.

■ Courts retain discretion to fashion appropriate sanctions—which may include dismissal of the charges against defendant—"to prevent manifest unfairness in governmental procedures relating to the acquisition and preservation of evidence potentially favorable to an accused." *People v. Gillett,* 629 P.2d 613, 619 (Colo.1981). *Riley,* 104 P.3d at 221–22 (implying that dismissal of the charges may not be warranted when extraordinary circumstances beyond the control of the police prevent administration of the blood test the driver has selected).

■ We apply an abuse of discretion standard to the trial court's imposition of sanctions for improper police conduct in implementing Colorado's express consent law. *Gillett,* 629 P.2d at 619.

Dismissal of the charges against defendant is a drastic remedy. *People v. Shinaut,* 940 P.2d 380, 383–84 (Colo.1997). Thus, in regard to administration of a blood test upon the driver's election, we have construed the statute to include a good faith effort required of the police to obtain and complete that test. *Gillett,* 629 P.2d at 618 n. 9; *Riley,* 104 P.3d at 221–22.

Our decisions approve a trial court's application of a dismissal sanction for police noncompliance with the driver's selection of a blood test, when the police have no reasonable protocol in place to obtain and complete the blood test under routine circumstances, or when the blood test is not administered and there is no showing of a good faith effort by the arresting officer to follow that protocol.

In *Gillett,* the Aurora police department received notice from the district attorney four to seven months prior to the defendants' arrest to implement arrangements for blood testing in suspected drunk driving cases. 629 P.2d at 618. However, when the defendants requested a blood test upon arrest by Aurora police officers, the department had no protocol in place to comply with their request. *Id.* "The only permissible inference from this record is that the denial of the defendants' requests was the result of a departmental decision to forego the use of blood testing in drunk driving cases, notwithstanding the provisions [of the express consent statute] granting the arrested driver the right to request and receive a blood test. The defendants having been denied their statutory right to a blood test, the only remaining question relates to the propriety of the dismissal order." *Id.*

We determined that the sanction of dismissal the trial court chose was not an abuse of discretion in that case because of "the failure of the police department to have taken routine steps in order to implement the arrested driver's right to a blood test under the statute." *Id.* at 619. The sanction of dismissal in *Gillett* vindicated the proposition that the state may not "disregard the statutory rights of the drivers with impunity." *Id.* at 618.

In *Gillett,* we stated that a good cause exception to dismissal of the charges could apply when there are exceptional circumstances that justify an arresting officer's noncompliance with a driver's request for a blood test. Such exceptional circumstances "might include those circumstances which, for reasons beyond the control of the enforcement authority, preclude the timely withdrawal and testing of blood by a quali-

fied person and in accordance with the rules and regulations of the state board of health." *Id.* at 618 n. 9. We reaffirmed the existence of a good cause exception to dismissal of charges in *Riley*, but found it to be inapplicable in that case because the prosecution did not present any evidence of extraordinary circumstances that prevented the usual service provider of such blood draws from administering the test within the required two hour period. 104 P.3d at 219, 222. "Inconvenience, a busy work load or delay," standing alone, did not constitute extraordinary circumstances that would excuse noncompliance with the statute in that case. *Id.* at 222.

■ Sanctions must be tailored to remedy improper police conduct in the case; dismissal or suppression of evidence may be appropriate in some cases but not in others.

For example, the statute states that a driver shall not change his or her initial selection and the arresting officer is required to implement the driver's initial selection. § 42–4–1301.1(2)(a)(II); *Shinaut*, 940 P.2d at 383–84; *Gillett*, 629 P.2d at 618–19. *See also Dike v. People*, 30 P.3d 197, 200 (Colo.2001) (stating that a driver is not permitted to change his or her initial election of a chemical test under the express consent statute); *Lahey v. Dep't of Revenue of the State of Colo., Motor Vehicle Div.*, 881 P.2d 458, 459–60 (Colo.App. 1994) (concluding that "a driver's election between the testing options is now deemed to be irrevocable, and the arresting officer is required to implement the test so elected, and only that test").

Nevertheless, in *Shinaut*, 940 P.2d at 384, despite the fact that the police officer allowed the driver to switch his initial selection from a breath test to a blood test in contradiction of the statute, we refused to impose any sanction. There, the driver could not obtain suppression of the blood results because he chose voluntarily to submit to that test. We reaffirmed this holding in *Dike*, 30 P.3d at 200–01.

Together, with respect to appropriate sanctions for noncompliance by police with Colorado's express consent statute *Gillett, Riley, Shinaut,* and *Dike* teach that dismissal of the charges against a defendant or suppression of evidence may be appropriate

sanctions under some, but not all, circumstances involving law enforcement's noncompliance with Colorado's express consent statute. The "good cause" exception we observed to exist but did not have occasion to apply in *Gillett* and *Riley* is not truly a statutory exception since the legislature did not choose to include language setting forth that exception and the statute does not necessarily imply such an exception. Rather, the good cause exception to dismissal of the charges is a case law constraint upon the choice of court-imposed remedies for police noncompliance with the express consent statute.

## D.

### Application to This Case

■ In the case before us, the arresting officer invoked the express consent statute and Turbyne elected a blood test. In order to implement Turbyne's choice, the officer followed the Aurora police department's established protocols by contacting dispatch to obtain a trained paramedic or a trained firefighter to perform the blood draw. Although the parties dispute the severity of the weather conditions, the arresting officer testified that "cold, drizzle, [and] ice" delayed his arrival to the scene and from there to Detox.

After calling dispatch twice, the dispatcher informed the officer that the prevailing weather combined with a high call volume prevented response in a timely manner by the private and fire department paramedics. The county court found that (1) what the arresting officer encountered under the facts of this case was beyond his control and (2) he could not get anybody to come help and take the blood test. Nevertheless, the county court dismissed the charges against Turbyne because "there has to be a legal excuse, it can't just be a factual excuse."

Following the reasoning of *Riley*, the district court pointed out that (1) "good cause" for the arresting officer's inability to obtain completion of the blood test involved "circumstances beyond the officer's control," (2) the term "circumstances" does not mean "legal circumstances," and (3) "circumstances

beyond the officer's control" means a "factual situation which the officer did not create." We agree.

In reviewing whether the county court abused its discretion by dismissing the charges in this case, we distinguish *Gillett* and *Riley*. In *Gillett*, the police department had no protocol in place for obtaining blood draws when drivers requested them. In *Riley*, a protocol was in place providing for response by a private paramedic service, but the prosecution did not present sufficient evidence to show the existence of extraordinary circumstances to explain why that service could not respond within the required two hour period. In *Gillett* and *Riley*, the prosecution did not present any evidence that the arresting officers made reasonable efforts to comply with the driver's request for a blood test.

In contrast to *Gillett* and *Riley*, the police department in this case had a reasonable protocol in place for blood draw response that included both a primary and a back-up mechanism—a contract with a private paramedic service and an arrangement with the fire department to alternatively provide the service. The arresting officer diligently endeavored to obtain the blood draw, which was prevented by the weather conditions and a high call volume rendering response not possible within the two hour time limit.

Under the circumstances of this case, the arresting officer made a reasonable effort to comply with Turbyne's request for a blood test; due to circumstances beyond his control, he was unable to obtain the assistance of a person qualified to administer the test. In *Gillett*, dismissal was justified because the police department failed to take "routine steps" in order to implement the driver's selection of a blood test. 629 P.2d at 619. We used the word "exceptional" in *Gillett's* and "extraordinary" in *Riley's* identification of a good cause exception, in order to distinguish circumstances beyond police control from those that are routine and are subject to police control. *Gillett*, 629 P.2d at 618 n. 9; *Riley*, 104 P.3d at 222. With an adequate protocol in place, there are extraordinary circumstances in this case beyond the control of the arresting officer that render the coun-

ty court's dismissal of the charges—the harshest sanction available for noncompliance with the express consent law—an abuse of discretion.

Because we conclude that the prosecution established extraordinary circumstances amounting to good cause that excuse the judicial sanction of dismissal for the officer's noncompliance with the Turbyne's request for a blood test, we now analyze whether Turbyne voluntarily consented to the breath test the officer proceeded to administer when he could not obtain completion of the blood test.

### E.

### Suppression of the Breath Test Results

■ After informing Turbyne that a blood test within the required two hour period would not be possible, the arresting officer offered him a breath test. Turbyne insisted on the blood test. The officer again offered a breath test. Turbyne refused. The officer then advised Turbyne that he could lose his driver's license if he did not submit to the breath test. After the officer's advisement, Turbyne submitted to the breath test.

However, as the legislature wrote it, the express consent law did not authorize the arresting officer to require Turbyne to take a breath test when the blood test was unavailable. *Gillett*, 629 P.2d at 619 n. 10. Nor do our decisions in *Gillett* and *Riley* construe the statute as allowing the police to compel a different test when extraordinary circumstances prevent administration of the driver-selected test. The good cause exception we established in those cases applies to excuse the judicial sanction of dismissal of the charges when the police are prevented in circumstances beyond their control from administering the driver-selected test.

■ As *Shinaut* and *Dike* demonstrate, when a driver selected to take the chemical test not initially selected, he or she may have voluntarily consented to the search of his or her person. *Shinaut*, 940 P.2d at 384 (holding that "[e]rroneous accommodation of a

citizen's request by a police officer does not warrant the sanction of excluding evidence").

When the controlling facts are undisputed, as here, the legal effect of those facts constitutes a question of law. *People v. D.F.,* 933 P.2d 9, 15–16 (Colo.1997)(applying totality of the circumstances test at the appellate level). A valid consent to search must be voluntary rather than the result of intimidation, coercion, or deception. *People v. Reddersen,* 992 P.2d 1176, 1182 (Colo. 2000); *People v. Lehmkuhl,* 117 P.3d 98, 101–02 (Colo.App.2004).

The court must first determine whether there is "objective evidence of coercion, duress, deception, promises, threats, intrusive conduct or other undue influence by the police, which critically impaired the defendant's judgment." *Reddersen,* 992 P.2d at 1182. In reviewing the totality of the circumstances surrounding the challenged police action, a trial or appellate court may consider the characteristics of the consenting person, such as youth, education, intelligence, and level of intoxication, as well as the surrounding circumstances, including whether the consenting person was "overborne by coercive police tactics." *People v. Helm,* 633 P.2d 1071, 1077 (Colo.1981)(when upholding police action in that case, pointing out that officer did not claim the right to conduct the sobriety test or attempt to deceive defendant about his rights). *See also Reddersen,* 992 P.2d at 1182 (stating that a court "must decide whether the police conduct could reasonably have appeared to be coercive to a person in the defendant's circumstances").

Suppression of evidence is an appropriate sanction when consent to the search is not voluntary. *People v. Diaz,* 53 P.3d 1171, 1175 (Colo.2002). In his brief to us, Turbyne requests suppression of the breath test results if we do not reverse the district court's ruling that the county court erred in dismissing the charges against him.

We conclude that Turbyne complied with the express consent statute by electing to take a blood test; under the existing statute, no action of his constituted a refusal that can be sanctioned administratively by revocation of his license for one year. The arresting officer contravened the statute when he stated that Turbyne's rejection of the breath test would constitute a refusal that would trigger the license revocation provisions.

It is up to the General Assembly, not us, to provide a statutory exception that would allow the arresting officer to require a driver to take the alternative form of chemical test when the driver-selected test is not available under circumstances beyond the control of the arresting officer.

Having ascertained that he could not obtain completion of the blood test within the required two hours, the arresting officer offered Turbyne a breath test. Although the statute does not state that the officer may offer the alternative test, it is not unreasonable and not worthy of judicial sanction that a police officer make such an offer under the circumstances, if extraordinary. As we recognized in *Gillett* and *Riley,* the driver has a recognized statutory interest in taking a test that may exculpate him when the arresting officer invokes the express consent law.

Here, Turbyne stood on his blood test selection. He could not be required to take the breath test when the blood test became unavailable due to extraordinary circumstances beyond the arresting officer's control. Only when the arresting officer threatened him with the loss of his license did Turbyne submit to the breath test.

The uncontested evidence in this case is that the officer advised Turbyne he could lose his license if he did not consent to a chemical test other than the one he selected. The arresting officer so testified.

We therefore conclude that the police did not obtain a valid consent to this search of Turbyne's person. Instead, the search was based on the officer's erroneous and coercive misstatement of the express consent law. Accordingly, the facts justify suppression of the breath test results, and the district court's order reinstating the charges against Turbyne must be modified to include suppression of those results.[3]

---

**3.** As with other cases in which certain evidence is suppressed, the prosecution may determine

## III.

Accordingly, we affirm the district court's judgment reinstating the charges against Turbyne; we order suppression of the breath test results on remand; and we return this case for further proceedings consistent with this opinion.

Justice MARTINEZ dissents, and Chief Justice MULLARKEY and Justice BENDER join in the dissent.

Justice MARTINEZ, dissenting.

The majority holds that the officer's failure to comply with Turbyne's request for a blood test is excused by circumstances beyond his control, rising to a good faith exception to section 42–4–1301.1(2)(a)(I)–(III). In my view, the paucity of evidence in this case offered to explain the state's failure to provide a blood test for the presence of alcohol falls far short of demonstrating the factual basis for a legal excuse. In absence of the exceptional circumstances contemplated in *Gillett*, I see no basis for affirming the district court's holding that the facts in this case create a good cause exception amounting to a legal excuse. *People v. Gillett*, 629 P.2d 613, 618 n. 9 (Colo.1981). Instead, I would find that these facts provide no legal excuse for violating the General Assembly's clear intent that drivers subject to an alcohol test be given the choice of blood or breath tests. Accordingly, I respectfully dissent.

The two cases on which the majority relies are *Gillett* and *Riley*. *Id.; Riley v. People*, 104 P.3d 218 (Colo.2004). *Gillett* concerned two alcohol-related arrests from October and November of 1978. In each case, the defendant requested a blood test but was informed by officers of the Aurora Police Department that "facilities were not available for a blood test and no tests of any type would be given." *Gillett*, 629 P.2d at 615. Earlier that year, the Aurora Community Hospital told the police that they would no longer draw blood for noninjury traffic stops. In response, the police chose not to develop a department protocol to deal with blood test requests. This policy was in direct violation of the expressed consent law that specifies that drivers be allowed to choose between tests. Consequently, we affirmed the trial court's determination that the Aurora Police violated the defendants' right to choose a blood test by providing no access to the test.

In *Gillett*, this Court suggested that "exceptional circumstances which amount in law to good cause" might excuse the state from its obligation to make a blood test available. *Id.* at 618. In a footnote elaborating on this possibility, we stated that such a "legal excuse" would require "circumstances ... beyond the control of the enforcement authority, preclud[ing] the timely withdrawal and testing of blood by a qualified person." *Id.* at n. 9. The plain language used in *Gillett* expressed the intention that the good cause excuse concern factual circumstances so extraordinary that a blood test be precluded as a result.

Two decades later, our opinion in *Riley* reiterated the possibility of a good cause exception but found the reason offered insufficient to excuse the state's legal obligation. *Riley*, 104 P.3d at 221–22. In *Riley*, the defendant was pulled over by an Arapahoe County sheriff's deputy. He requested a blood test, but the deputy was told that the local ambulance service was unable to timely comply. When the defendant refused the breath test, he was transported to Aurora Detox and again asked to take a breath test. Again, he declined. The defendant moved to dismiss the charges based on the deputy's failure to comply with the express consent law. At a motions hearing, the deputy testified that he did not know why the ambulance service was unavailable and was unaware of alternative procedures for performing a blood test. *Id.* at 219. The county court, and on appeal the district court, concluded that the ambulance service's inability to perform the test in the required time period was beyond the deputy's control and thus satisfied the good cause exception. *Id.* This Court reversed, holding that there was no evidence in the record suggesting the existence of the "exceptional circumstances" first outlined in *Gillett*. *Gillett*, 629 P.2d at 618. Instead, we held that mere "inconvenience, a

whether to proceed with this case in light of

other evidence that may be admissible at trial.

**574**

busy workload, or delay" does not rise to the factual circumstances amounting to a legal excuse. *Riley,* 104 P.3d at 222.

The majority in the present case argues that the nature and quality of weather conditions meets the good cause exception, rising to the factual circumstances amounting to a legal excuse. I see nothing in the record to suggest that the weather was anything more than inconvenient and certainly nothing giving rise to an exceptional circumstance precluding a blood test. *Gillett,* 629 P.2d at 618 n. 9. Although the officer testified that the weather was drizzly, cold, and icy, these conditions were minor enough that he did not even mention them in his arrest report. In addition, the prosecution offered no evidence regarding the severity of drizzle or ice, and no witnesses to testify to road conditions. On cross examination, the officer testified that he and other officers had been able to travel without difficulty.

Certainly drizzle, ice, and cold temperatures are not uncommon for Aurora, Colorado in late April. In fact, adverse weather is not uncommon for six months out of the year throughout Colorado. To call these conditions exceptional suggests that adverse weather will regularly and frequently excuse the state from meeting its legal obligation to provide a blood test.

Further, the majority finds that the Aurora Police Department had an adequate protocol in place to deal with the need to provide blood tests on request. However, no evidence was offered about the protocol and no explanation is offered as to how the protocol provides for a busy workload or foreseeable adverse weather conditions. Without any information about the protocol, the majority cannot fairly conclude that the protocol was adequate or that the circumstances not provided for were exceptional. Despite this, the majority proclaims the protocol adequate and the officer excused from performing a blood test. What the majority fails to consider is that the statutory obligation is not merely the officer's, it is also the state's obligation. Thus, a police department must do more than promulgate a protocol for dealing with blood test requests, it must have an adequate protocol, which provides requested blood

tests in all but the most exceptional circumstances.

Because I believe the state has not established the existence of exceptional circumstances precluding a blood test in accordance with the criteria suggested in *Gillett* and *Riley,* I respectfully dissent.

I am authorized to state that Chief Justice MULLARKEY and Justice BENDER join in this dissent.