The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 8, 2018

**2018COA30**

**No. 16CA1524, Abu-Nantambu-El v. State of Colorado —**

**Criminal Law — Compensation for Certain Exonerated Persons**

A division of the court of appeals considers whether a
defendant whose felony convictions were vacated, but who remains
convicted of a misdemeanor in the same case, is eligible for
compensation under § 13-65-101 — 103, C.R.S. 2017 (Exoneration
Statute).  The division concludes that, because the plain language
of the statute requires that "all" of a petitioner's convictions in the
case be vacated, and because the defendant-petitioner remained
convicted of a misdemeanor in the case at issue, he was not entitled
to petition for compensation under the Exoneration Statute.

COLORADO COURT OF APPEALS                                    **2018COA30**

---

Court of Appeals No. 16CA1524
City and County of Denver District Court No. 15CV520
Honorable Morris B. Hoffman, Judge

---

Abdu-Latif Kazembe Abu-Nantambu-El,

Plaintiff-Appellant,

v.

State of Colorado,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE FREYRE
Bernard and Berger, JJ., concur

Announced March 8, 2018

---

Abdu-Latif Kazembe Abu-Nantambu-El, Pro Se

Cynthia H. Coffman, Attorney General, Ethan E. Zweig, Assistant Attorney
General, Denver, Colorado, for Defendant-Appellee

¶ 1    Defendant-petitioner, Abdu-Latif Kazembe Abu-Nantambu-El, appeals the district court's order granting the State of Colorado's motion to dismiss his petition for compensation pursuant to the "Compensation for Certain Exonerated Persons" statute, sections 13-65-101 to -103, C.R.S. 2017 (Exoneration Statute).[1]  As a matter of first impression, we consider whether a defendant-petitioner whose felony convictions were vacated, but who remains convicted of a misdemeanor in the same case, is eligible for compensation under the Exoneration Statute.  We conclude he is not.  We further conclude that, because he is not eligible to file a petition under the Exoneration Statute, we need not address whether the court deprived him of his right to a jury trial under the statute.  Accordingly, we affirm the district court's order granting the State's motion to dismiss.

---

[1] Between the district court's ruling and the appellate briefing, the United States Supreme Court held that the Exoneration Statute's requirement that a defendant prove his or her innocence by clear and convincing evidence to obtain a refund of costs, fees, and restitution paid pursuant to an invalid conviction does not comport with the defendant's right to due process under the Fourteenth Amendment to the United States Constitution.  *Nelson v. Colorado*, 581 U.S. ___, ___, 137 S. Ct. 1249, 1255-58 (2017).

## I. Background

¶ 2    A jury convicted Abu-Nantambu-El (formerly known as Paul Delano McKnight, Jr.) of first degree sexual assault (a class 3 felony), second degree kidnapping (a class 2 felony), and third degree assault (a class 1 misdemeanor) in the same case, all arising out of an incident in which the victim claimed that Abu-Nantambu-El had raped her. His convictions were affirmed on appeal. *People v. McKnight*, 813 P.2d 331 (Colo. 1991).

¶ 3    Abu-Nantambu-El then filed a pro se Crim. P. 35(c) motion claiming ineffective assistance of counsel. He presented evidence that scientific testing was available during his trial and that his attorney never requested it. During the postconviction proceedings, a scientific test was conducted and it ruled out Abu-Nantambu-El as the contributor of the semen sample found in the victim's underwear.

¶ 4    The district court found that Abu-Nantambu-El's counsel provided ineffective assistance and that, but for the ineffective assistance, Abu-Nantambu-El would probably not have been convicted of the kidnapping and sexual assault charges. The court vacated these two felony convictions.

¶ 5    However, the court also found that counsel's ineffective assistance had not affected Abu-Nantambu-El's third degree assault conviction, and it denied his Crim. P. 35(c) motion as to that conviction. The court's order was affirmed on appeal. *See People v. McKnight*, slip op. at 12 (Colo. App. No. 97CA1638, Jan. 14, 1999) (not published pursuant to C.A.R. 35(f)). The prosecution elected not to retry the felony counts, but Abu-Nantambu-El remains convicted of the misdemeanor in that case.

¶ 6    Based on the order vacating his felony convictions, Abu-Nantambu-El filed a petition for compensation pursuant to the Exoneration Statute. The State filed a C.R.C.P. 12(b)(5) motion to dismiss, contending that Abu-Nantambu-El was not eligible to seek relief because (1) the order vacating the kidnapping and sexual assault convictions was based on ineffective assistance of trial counsel, a ground "unrelated to the petitioner's actual innocence"; and (2) Abu-Nantambu-El remained convicted of third degree assault, and therefore he did not satisfy the portion of the statute requiring that "all convictions in the case" be vacated or reversed. The district court rejected the State's first argument, but agreed with its second argument and granted the motion to dismiss. The

State did not cross-appeal the court's "actual innocence" finding, so the only issue we consider is the eligibility requirements for filing a petition for compensation under the Exoneration Statute.

## II. Analysis

¶ 7 Abu-Nantambu-El contends that the district court erred when it concluded that his misdemeanor conviction precluded him from filing a petition under section 13-65-102(2)(a), C.R.S. 2017, because it was never vacated or reversed and remains on his record. He also contends that the court erred by rejecting his request for a jury trial under section 13-65-102(6)(b). We reject his first contention and therefore do not consider his second contention.

### A. Standard of Review and Applicable Law

¶ 8 We review de novo the district court's grant of a motion to dismiss. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004). In reviewing a motion to dismiss, we accept all matters of material fact in the petition as true and view the allegations in the light most favorable to the plaintiff. *See Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010). Under this standard, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Warne v. Hall*, 2016 CO 50, ¶ 9 (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009)). That is, a party must plead sufficient facts that, if taken as true, suggest plausible grounds to support a claim for relief. *Warne*, ¶ 24.

¶ 9 Statutory interpretation presents a question of law, which we review de novo. *People v. Garcia*, 113 P.3d 775, 780 (Colo. 2005). When interpreting a statute, a court must ascertain and give effect to the General Assembly's "purpose or intent in enacting the statute." *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001). To determine legislative intent, we first look to the language of the statute, giving words and phrases their commonly accepted and understood meanings. *Garcia*, 113 P.3d at 780; *Martin*, 27 P.3d at 851. If those words are clear and unambiguous, we apply the statute as written. *See Martin*, 27 P.3d at 851. We may discern the plain meaning of statutory language by referring to its common dictionary meaning. *See People v. Hunter*, 2013 CO 48, ¶ 10.

¶ 10 "The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the plain meaning of the words." *Hendricks v. People*, 10 P.3d 1231, 1238 (Colo. 2000) (quoting *City & Cty. of Denver v. Gallegos*, 916 P.2d 509, 512 (Colo. 1996)); *People v. Guenther*, 740 P.2d 971, 976 (Colo.

1987) (same).  Consequently, "[w]hen the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully." *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora*, 221 P.3d 399, 419 (Colo. 2009); *accord United States v. Pauler*, 857 F.3d 1073, 1076 (10th Cir. 2017) (Where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

¶ 11     Finally, a court must read and consider the statute as a whole, giving harmonious and sensible effect to all its parts.  *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003).  If the statute is unambiguous and does not conflict with other statutory provisions, the court need look no further in determining its meaning.  *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002).  However, if the language of the statute is ambiguous, or in conflict with other provisions, the court may look to legislative history, prior law, the

consequences of a given construction, and the goal of the statutory scheme to determine its meaning. *Id.*

   B.   Eligibility Requirements for Filing a Petition for Compensation

¶ 12   We begin by agreeing with Abu-Nantambu-El that the Exoneration Statute is aimed at compensating persons wrongfully convicted of and incarcerated for felonies. Indeed, section 13-65-102(1)(a) provides:

> Notwithstanding the provisions of article 10 of title 24, C.R.S., a person who has been convicted of a felony in this state and sentenced to a term of incarceration as a result of that conviction and has served all or part of such sentence, or an immediate family member of such person, may be eligible for compensation as set forth in this article upon a finding that the person was actually innocent of the crime for which he or she was convicted.

Thus, a person who is wrongfully convicted of a misdemeanor may not seek relief under section 13-65-102(1). However, it does not necessarily follow that when a person is convicted of both a felony and a misdemeanor, in the same case, the court should only consider the felony and disregard the misdemeanor.

¶ 13   Section 13-65-102(2) sets forth the prerequisites for filing a petition for compensation:

A petition may be filed pursuant to this section only:

(a) When no further criminal prosecution of the petitioner for the crimes charged, or for crimes arising from the same criminal episode in the case that is the subject of the petition, has been initiated by the district attorney or the attorney general and subsequent to one of the following:

(I) A court vacating or reversing *all convictions in the case* based on reasons other than legal insufficiency of evidence or legal error unrelated to the petitioner's actual innocence and following an order of dismissal of all charges; or

(II) A court vacating or reversing *all convictions in the case* based on reasons other than legal insufficiency of evidence or legal error unrelated to the petitioner's actual innocence and following an acquittal of all charges after retrial; and

(b) Either:

(I) If the conditions described in paragraph (a) of this subsection (2) are met on or after June 5, 2013, not more than two years after said conditions are met; or

(II) If the conditions described in paragraph (a) of this subsection (2) are met before June 5, 2013, not more than two years after June 5, 2013.

(Emphasis added.)

8

¶ 14    After satisfying these threshold eligibility requirements to file a petition, a petitioner must then satisfy additional requirements to be eligible for compensation.  *See* § 13-65-102(4)(a)(I) (a person who does not meet the definition of actual innocence is ineligible for compensation); § 13-65-102(4)(a)(II) (A person is ineligible if "[h]e or she committed or suborned perjury during any proceedings related to the case that is the subject of the claim."); § 13-65-102(4)(a)(III) (A person is ineligible if, "[t]o avoid prosecution in another case for which the petitioner has not been determined to be actually innocent, he or she pled guilty in the case that served as the basis for the conviction and incarceration that is the subject of the petition.").

¶ 15    The petition constitutes a civil claim for relief, § 13-65-102(1)(b), subject to the Colorado rules of civil procedure.  § 13-65-102(5)(g).  Upon receipt of a petition, the State may contest either the petitioner's actual innocence or the petitioner's eligibility for compensation.  § 13-65-102(5)(d)(II).  If the petition is contested, "the district court shall set the matter for a trial to the district court or, at the written election of either party, to a trial to a jury of six." § 13-65-102(6)(b).

¶ 16    The only portion of the statute at issue here is the meaning of "all convictions" in section 13-65-102(2)(a)(I) and (II), because no one disputes that Abu-Nantambu-El remains convicted of third degree assault in the case at issue. Abu-Nantambu-El urges us to interpret "all convictions" to mean felony convictions. He reasons that because the Exoneration Statute addresses only wrongly convicted felons, the legislature could not have meant to include misdemeanor convictions within its parameters. His argument might have some force were we to consider this language in isolation, because he is correct that the Exoneration Statute was enacted to compensate wrongfully convicted felons. However, we must view the statute as a whole, and in doing so, we reject his interpretation for four reasons.

¶ 17    First, the legislature's use of the word "felony" in section 13-65-102(1)(a) convinces us that its use of "all convictions" in section 13-65-102(2)(a) is intended to be broader than merely felony convictions. *See City of Grand Junction v. Ute Water Conservancy Dist.*, 900 P.2d 81, 91 (Colo. 1995) ("The word 'all' is an unambiguous term. The dictionary definition and common usage of the word 'all' do not provide for an exception or exclusion that is not

expressly specified.") (citations omitted); *Hudgeons v. Tenneco Oil Co.*, 796 P.2d 21, 23 (Colo. App. 1990) ("'All' is an unambiguous term and means the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with 'every' and 'each.'"). If the legislature had intended a court to consider only the felonies vacated or reversed in a case, it could have said so, as it did in sections 13-65-102(1)(a) and 13-65-103(3)(a). Because it did not, we view the legislature's choice of "all convictions" as a deliberate one intended to encompass all the convictions in a case. *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist.*, 221 P.3d at 419. Moreover, we may not add words to a statute that do not exist. *People v. Diaz*, 2015 CO 28, ¶ 12 ("We do not add words to the statute or subtract words from it." (quoting *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007))); *People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009) ("But, in interpreting a statute, we must accept the General Assembly's choice of language and not add or imply words that simply are not there.").

¶ 18     Second, a petition may only be filed, under section 13-65-102(2)(a), when no further prosecution of the petitioner for "the

crimes charged, or for crimes arising from the same criminal episode in the case that is the subject of the petition," has occurred. Like the "all convictions" language, "crimes charged" and "crimes arising from the same criminal episode" plainly encompass more than simply the felonies charged. If the filing requirements were limited to felony charges, the legislature would have so stated. Its choice of broader language evidences its intent to restrict the eligibility requirements for filing petitions for compensation to those cases in which a petitioner has been exonerated of *all* charges, not just the felony charges. *Turbyne*, 151 P.3d at 568 ("[W]e cannot supply the missing language and must respect the legislature's choice of language.").

¶ 19    Third, we are not persuaded by Abu-Nantambu-El's contention that the word "incarceration" in section 13-65-102(1)(a) restricts the language of subsection (2)(a) to felony convictions. This assertion is inconsistent with the definition of incarceration found in section 13-65-101(5), which provides:

> "Incarceration" means a person's custody in a county jail or a correctional facility while he or she serves a sentence issued pursuant to a felony conviction in this state or pursuant to the person's adjudication as a juvenile

delinquent for the commission of one or more offenses that would be felonies if committed by a person eighteen years of age or older. For the purposes of this section, "incarceration" includes placement as a juvenile to the custody of the state department of human services or a county department of social services pursuant to such an adjudication.

¶ 20 In our view, this definition recognizes that a person charged with a felony may remain incarcerated in a county jail pending a conviction and sentence. Our view is supported by the language of section 13-65-103(3)(a) entitling an exonerated person to receive compensation in the amount of "seventy thousand dollars for each year that he or she was incarcerated for the felony of which he or she has been exonerated."

¶ 21 As Abu-Nantambu-El concedes, the purpose of the statute is to compensate those who are actually innocent for the time they spent wrongfully incarcerated. Abu-Nantambu-El's interpretation of "incarceration" would lead to the absurd result of compensating a wrongfully convicted person for the time he or she spent in the custody of the Department of Corrections but not for the time he or she spent awaiting that wrongful conviction in a county jail. Indeed, a person sentenced to the custody of the Department of

13

Corrections is entitled, as a matter of law, to receive credit against the sentence for pretrial confinement in a county jail. *See* § 18-1.3-405, C.R.S. 2017 ("A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement."). And we may not interpret a statute in a way that leads to absurd results. *Pineda-Liberato v. People*, 2017 CO 95, ¶ 22.

¶ 22     Fourth, Abu-Nantambu-El's contention is further undermined by the specific language of section 13-65-103 pertaining to the amount of compensation a qualified person may be awarded. In particular, section 13-65-103(3)(a) specifies annual compensation amounts for "the felony of which he or she has been exonerated." The legislature's choice of the word "felony" in this provision supports our conclusion that its decision to use "all convictions" in the eligibility requirements provision encompasses more than felony convictions. *Pineda-Liberato*, ¶ 22 ("We also read the statutory scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts . . . .").

¶ 23    Reading the Exoneration Statute as a whole, we conclude that the General Assembly intended to require that "all convictions in the case" be vacated or reversed, including any misdemeanor convictions, in order for a petition for compensation to qualify for a district court's further consideration.  Because we find the language unambiguous, we necessarily reject Abu-Nantambu-El's invitation to consider the statute's legislative history.  *See Luther*, 58 P.3d at 1015.

¶ 24    Abu-Nantambu-El finally contends that he qualifies to file a petition under the Exoneration Statute because the misdemeanor conviction was factually unrelated to the felony conviction.[2]  We disagree for two reasons.

¶ 25    First, Abu-Nantambu-El did not provide the record from his postconviction hearing as part of this appeal, and the burden is on

---

[2] Abu-Nantambu-El explains that he did not consider including the misdemeanor conviction and sentence in his Crim. P. 35(c) motion because the sentence "had been fully served and had no effect, and was not the reason nor basis, nor was it factually related to his wrongful incarceration."  However, neither party disputes that the district court's postconviction ruling considered the misdemeanor conviction, concluded that sufficient evidence supported it — as evidenced by Abu-Nantambu-El's concession of sufficiency — and denied the motion as to that count.

15

an appellant to provide a record justifying reversal. *See* § 13-65-102(5)(f)(I); C.A.R. 10. Absent this record, we must assume that the district court's finding that all of the convictions arose out of the same incident is correct. *See People v. Gallegos,* 179 Colo. 211, 213, 499 P.2d 315, 316 (1972) ("No transcript of the evidence considered by the lower court was made a part of the record by appellant, and in the absence of any showing to the contrary we must presume that the findings are supported by the evidence presented to and considered by the court.").

¶ 26  Second, the plain language of the petition eligibility provision, § 13-65-102(2)(a), does not distinguish between convictions arising from factually related and unrelated counts. Instead, the statute requires that "all convictions *in the case*" must have been vacated or reversed, not just those convictions factually related to the felony. § 13-65-102(2)(a) (emphasis added).

¶ 27  Accordingly, we conclude that because Abu-Nantambu-El failed to satisfy the petition eligibility requirements set forth in section 13-65-102(2)(a), his petition did not state a plausible claim for relief. We therefore affirm the district court's ruling granting the State's motion to dismiss.

C. Right to Trial Under Section 13-65-102(6)(b)

¶ 28    Because we have concluded that Abu-Nantambu-El's petition did not meet the threshold requirements for a district court's further consideration, we reject his contention that the court erred in denying him a trial on the petition under section 13-65-102(6)(b).

### III.    Conclusion

¶ 29    The judgment is affirmed.

JUDGE BERNARD and JUDGE BERGER concur.