Colorado Supreme Court Opinions || April 6, 2015


Colorado Supreme Court -- April 6, 2015
2015 CO 23. No. 13SA304. Concerning the Protest of McKenna and McKenna Ranch to the Revised Abandonment List of Water Rights in Water Division No. 2: McKenna v. Witte, Div. Engineer for Water Div. 2.



 Â The Supreme Court of the State of Colorado 
 2 East 14th Avenue â¢ Denver, Colorado 80203


 2015 CO 23


 Supreme Court Case No. 13SA304 
 Appeal from the District Court 
 Water Division 2, Case No. 12CW52
 Honorable Larry C. Schwartz, Water Judge


 Concerning the Protest of Tom McKenna and McKenna Ranch to the Revised
 Abandonment List of Water Rights in Water Division No. 2


 Applicants-Appellants: 
 Tom McKenna and McKenna Ranch,
 v.
 Opposer-Appellee: 
 Steve Witte, as Division Engineer for Water Division 2.


 Judgment Affirmed 
 en banc

 April 6, 2015


 Attorneys for Applicants-Appellants:
 Felt, Monson & Culichia, LLC
 David M. Shohet

 Colorado Springs, Colorado

 Attorneys for Opposer-Appellee:
 Cynthia H. Coffman, Attorney General
 Katherine A. D. Ryan, Assistant Attorney General

 Denver, Colorado

 JUSTICE BOATRIGHT delivered the Opinion of the Court.
 Â 

 Â¶1Â Â Â Â Â Â Â  In this direct appeal from a judgment of the water court, we consider the Applicantsâ challenge to the inclusion of three water rights on the 2010 abandonment list for Water Division Two. The Division Engineer placed the Applicantsâ three Sanchez Ditch water rights on the decennial abandonment list because the ditch had not diverted water for several decades. After a hearing in July 2013, the water court determined that the Sanchez Ditch water rights had not been applied to beneficial use for the statutory abandonment period and found that the Applicants had failed to rebut the resultant presumption of intent to abandon the rights. The water court therefore decreed the Sanchez Ditch water rights abandoned.

 Â¶2We must determine whether the water courtâs judgment of abandonment was proper. The Applicants contend that the judgment was improper because the Division Engineer missed the statutory deadline to prepare the abandonment list by several days, which they claim divested the water court of jurisdiction. We hold that the deadline to prepare the abandonment list under section 37-92-401(1)(a), C.R.S. (2014), is directional and is not a jurisdictional mandate. Thus, the Division Engineerâs failure to prepare the abandonment list by the statutory deadline did not divest the water court of jurisdiction over the case. Further, we decline to overturn the water courtâs determination of abandonment because the record supports the conclusion that the Applicants intended to permanently discontinue their use of the Sanchez Ditch water rights. Accordingly, we affirm the water courtâs judgment of abandonment and remand the case to that court for further proceedings consistent with this opinion.Â 

 I. Facts and Proceedings Below

 Â¶3Â Â Â Â Â Â Â  The Huerfano County District Court decreed three water rights in the Cucharas River to the Sanchez Ditch on June 12, 1889.[1] The Sanchez Ditch rights comprise priorities 25, 53, and 64 on the river. They were decreed cumulatively to irrigate up to 200 acres at a rate of 4 c.f.s. (cubic feet per second). During the first half of the 1900s, water was regularly diverted through the Sanchez Ditch to irrigate crops.

 Â¶4Â Â Â Â Â Â Â  The diversion point for the Sanchez Ditch has been moved twice as the course of the Cucharas River has changed. Early in the 1900s, the owners of the ditch built a concrete diversion dam upstream of the decreed point of diversion. When further erosion cut the ditch off from the river, the owners added an extension and installed a pipeline. The ditch extension still intersects the Cucharas, although the pipeline is gone, there is no headgate, and the bed of the ditch is at least four feet above the river. In addition, the concrete dam still straddles the Cucharas about a thousand feet upstream of the current ditch terminus. The diversion structure, however, is silted in and disconnected from the current Sanchez Ditch. Although segments of the Sanchez Ditch could carry water with some minor maintenance, the ditch cannot divert water without a diversion dam or pump system, as well as a new headgate. Moreover, the owners never legally changed the decreed point of diversion to correspond to the physical modifications to the ditch.Â 

 Â¶5Â Â Â Â Â Â Â  The Applicants, Tom McKenna and McKenna Ranch (collectively, âMcKennaâ), acquired the Sanchez Ditch rights in 1991 when Mr. McKenna bought a 25,000-acre tract of land east of Walsenburg, Colorado at a foreclosure sale. The property had stagnated in bankruptcy litigation for years and was in disrepair, but McKenna developed it into a working cattle ranch. Some of the earliest improvements he made were geared toward the development of a reliable supply of stock water. He cleaned out the old, abandoned wells on the property, bought used gasoline tanks for water storage, and drilled his own, deeper wells. He also looked into the water rights attached to the property. He learned from a real estate firm that many of the water rights listed in his deed were abandoned or non-existent but that he did own âpossible irrigation rights using the Sanchezâ Ditch. He claims that he has used the Sanchez Ditch since the mid-1990s to irrigate native grasses by flooding a nearby pasture.

 Â¶6Â Â Â Â Â Â Â  During the preparation of the 2000 abandonment list, the local water commissioner spoke to McKennaâs water attorney about the neglected condition of the Sanchez Ditch. The water commissioner, who has administered water rights in the Cucharas River since 1988, noted that the ditch had no headgate and that he had never seen water diverted through it. In the decade that followed this warning, the water commissioner watched the Sanchez Ditch continue to deteriorate. When the Division Engineer began the 2010 abandonment list, the water commissioner recommended the inclusion of McKennaâs Sanchez Ditch water rights. Pursuant to section 37-92-401(1)(a), C.R.S. (2014), the Division Engineer included the Sanchez Ditch water rights on the 2010Â abandonment list and notified McKenna of the inclusion by mail on July 28, 2010.[2]About eleven months later, McKenna sent the Division Engineer a letter stating his objection to the inclusion of his water rights on the decennial abandonment list.[3] The Engineer denied McKennaâs objection and included the Sanchez Ditch water rights on the Revised 2010 Abandonment List, which was published in the December 2011 rÃ©sumÃ© in Water Division Two. McKenna then filed a protest with the water court pursuant to section 37-92-401(5)(a) and asked that the Sanchez Ditch be removed from the revised abandonment list.

 Â¶7Â Â Â Â Â Â Â  The water court conducted a hearing on McKennaâs protest according to section 37-92-401(6). After listening to the Stateâs evidence that the Sanchez Ditch water rights had not been applied to beneficial use since at least 1982, the court found that there was sufficient evidence of nonuse to create a presumption of abandonment. McKenna then attempted to rebut that presumption and prove that he never intended to abandon his Sanchez Ditch water rights. He testified that he regularly cleaned, repaired, and put water in the ditch. He also submitted a receipt from 2003 for ditch maintenance completed by a neighbor, Scott Davis; handwritten notes that described sporadic use of the Sanchez Ditch to water native grasses in 2000, 2001, and 2003; and pictures of a wet Sanchez Ditch date-stamped the summer of 2003. In response, the State questionedÂ Davis about his work on the Sanchez Ditch. Davis recalled working on the ditch â[o]nce, possibly twice.â He testified that he had cleaned segments of the ditch and once threw a tire into the concrete structure to mimic a headgate and divert water out of the river. This event occurred shortly after McKenna bought the property, and Davis testified that, although they ran water through the ditch, no irrigation occurred. Davis also remembered that he had given McKenna a blank invoice about two months before the hearing because McKenna claimed to have lost the original receipt for this work. Davis did not recognize the handwriting on the receipt submitted into evidence.

 Â¶8Â Â Â Â Â Â Â  After the hearing, the State and McKenna filed written closing arguments. The State focused on McKennaâs failure to rebut the presumption of abandonment that arose from decades of nonuse. McKenna claimed that he never abandoned his Sanchez Ditch water rights and that, because the initial 2010 abandonment list bears the date âJuly 7, 2010,â the Division Engineer violated section 37-92-401(1)(a), which requires that he âprepare decennially, no later than July 1, 1990, and each tenth anniversary thereafter, a separate abandonment list.â According to McKenna, the Division Engineerâs failure to strictly comply with the statutory timeline prevented the water court from terminating his Sanchez Ditch water rights.

 Â¶9Â Â Â Â Â Â Â  The water courtâs decree considered McKennaâs statutory compliance argument even though the date on which the Division Engineer prepared the 2010 abandonment list was arguably not an issue at the hearing.[4] The court concluded that the DivisionÂ Engineer complied with the overall statutory scheme because he published the list during July. Next, the water court weighed the Stateâs evidence that Sanchez Ditch water had not been applied to beneficial use for over two decades. Although water from the over-appropriated Cucharas was available to the Sanchez Ditch for an average of sixty-three days per year between mid-May and mid-July,[5] years of diversion records and aerial photographs showed that the dilapidated diversion structure for the Sanchez Ditch was neither usable nor used since at least 1982. Additionally, a neighboring landowner who regularly drove by the ditch never saw it carry water. The court concluded that this evidence established the ten years of nonuse required under section 37-92-402(11) to create a rebuttable presumption of abandonment, shifting the burden to McKenna to prove that he did not intend to abandon the Sanchez Ditch.

 Â¶10Â Â Â Â Â Â Â  The court found the âprevaricated receipt and the choreographed photosâ of the 2003 diversion insufficient to overcome the presumption. Instead, the court found that the pictures were staged to avoid abandonment. The court found no evidence of actual repairs to the ditch, no attempt to legally change the point of diversion, and no in-priority calls for water until 2013. Moreover, although McKenna participated inÂ some local water-court matters, he never did so to protect his Sanchez Ditch water rights. Accordingly, the water court determined, from the totality of the circumstances, that McKenna did not prove any actual, beneficial use of his Sanchez Ditch water rights, nor did he present any acceptable justification for the extended period of nonuse. In so doing, the court concluded that McKennaâs decision to spend his resources developing wells showed that he did not find the Sanchez Ditch worth the required repairs. Thus, the water court ordered that McKennaâs Sanchez Ditch water rights be decreed abandoned.

 Â¶11Â Â Â Â Â Â Â  We now consider McKennaâs appeal of the water courtâs judgment. We consider, first, whether the statutory deadline for preparation of the abandonment list is a jurisdictional mandate and, second, whether the water courtâs determination of abandonment of the Sanchez Ditch water rights constitutes reversible error.[6]

 II. Standard of Review

 Â¶12Â Â Â Â Â Â Â  This case presents two issues: the first a question of law, the second of fact. We review the water courtâs legal conclusions de novo but leave its factual findings intact unless they have no support in the record. S. Ute Tribe v. King Consol. Ditch Co., 250 P.3d 1226, 1232 (Colo. 2011). We begin our analysis with a de novo review of the waterÂ courtâs interpretation of statutory abandonment procedure. As we interpret the statute anew, our goal is to effectuate the legislatureâs intent. Id. at 1233. âIf the plain language of the statute clearly expresses the legislative intent, then [we] must give effect to the ordinary meaning of the statutory language. Similarly, [we] should avoid interpreting a statute in a way that defeats the obvious intent of the legislature.â In re Water Rights of Double RL, Co., 54 P.3d 908, 910 (Colo. 2002).

 Â¶13Â Â Â Â Â Â Â  As to factual findings, it is for the water court to weigh evidence and draw inferences. Town of Minturn v. Tucker, 2013 CO 3, Â¶ 25, 293 P.3d 581, 590. Its factual findings are binding on appeal unless clearly erroneous. Id. The resolution of an abandonment case, in particular, is a fact-intensive inquiry. Haystack Ranch, LLC v.Â  Fazzio, 997 P.2d 548, 552 (Colo. 2000). Thus, we will not disturb the water courtâs judgment of abandonment unless the evidence is wholly insufficient to support its decision. Id. We will âsearch the record for any evidence in support of the decision, and, if successful, . . . uphold the decision even if, had this court been the trier of fact, it might have held differently.â E. Twin Lakes Ditches & Water Works, Inc. v. Bd. of Cnty. Commârs, 76 P.3d 918, 922 (Colo. 2003).

 III. Section 37-92-401(1)(a) Is Not a Jurisdictional Mandate

 Â¶14Â Â Â Â Â Â Â  Under Coloradoâs prior appropriation system, the first person to divert unappropriated water from a stream and apply it to beneficial use acquires a right to use that water. Colo. Const. art. XVI, Â§ 6; Coffin v. Left Hand Ditch Co., 6 Colo. 443, 447 (1882). A water right is âa special type of property rightâ that gives its owner the right to use, rather than possess, the resource. Navajo Dev. Co. v. Sanderson, 655 P.2d 1374,Â 1377 (Colo. 1982). In the context of abandonment, the usufructuary nature of water rights means that ânonuse retires the use entitlement to the stream.â Haystack Ranch, 997 P.2d at 553. Thus, when a court decrees a water right abandoned, âthe property rights adhering to the particular water right no longer exist.â Id.

 Â¶15Â Â Â Â Â Â Â  The Water Right Determination and Administration Act of 1969 (âthe 1969 Actâ) creates an administrative and judicial process for extinguishing abandoned water rights. The 1969 Act directs the Division Engineer to compile decennially a list of all absolute water rights that he determines have been abandoned through nonuse. Â§ 37-92-401(1)(a); City & Cnty. of Denver v. Middle Park Water Conservancy Dist., 925 P.2d 283, 286 (Colo. 1996). The statute establishes a timeline for the preparation, publication, and revision of the list before it is incorporated into a water court decree pursuant to section 37-92-401(6) or (7). The first step in the process requires the Division Engineer to âprepareâ a list of abandoned water rights by July 1. Â§ 37-92-401(1)(a). The record in this case shows that the 2010 list bears the date âJuly 7.â McKenna contends that the Division Engineer failed to abide by the statutory preparation deadline, which, he argues, divested the water court of authority to cancel his water rights. He casts this argument as an issue of subject matter jurisdiction.

 Â¶16Â Â Â Â Â Â Â  âSubject matter jurisdiction concerns âthe courtâs authority to deal with the class of cases in which it renders judgment.ââ Closed Basin Landowners Assân v. Rio GrandeÂ  Water Conservation Dist., 734 P.2d 627, 636 (Colo. 1987) (quoting In re Marriage of Stroud, 631 P.2d 168, 170 (Colo. 1981)). Under the 1969 Act, water courts have the power to decide âwater matters,â which include abandonment proceedings.Â Â§ 37-92-203(1); Gardner v. State, 614 P.2d 357, 362 (Colo. 1980). Section 37-92-401(6) provides that the water court âshall conduct hearings on the decennial abandonment list filed by the division engineer and any protests that have been filed with respect thereto.â That section vests the water court with authority to adjudicate the rights of everyone who may be affected by the courtâs ruling and to enter an appropriate decree. Â§ 37-92-401(6), (7).[7]

 Â¶17Â Â Â Â Â Â Â  McKenna argues that the water court in this case did not have the power to adjudicate his Sanchez Ditch rights and enter an abandonment decree because the Division Engineer did not strictly comply with section 37-92-401(1)(a). McKenna likens his case to Double RL, in which we reversed the water courtâs order canceling a conditional water right because the court failed to provide notice of the cancellation to the owner as required by section 37-92-305(7). 54 P.3d at 909. In Double RL, our task was to reconcile two statutory provisions: section 37-92-301(4)(a)(I), which provides that a conditional water right âshall be considered abandonedâ if the owner does not file an application for a finding of reasonable diligence every six years, and sectionÂ 37-92-305(7), which mandates that the water court âshall give noticeâ before it cancels a conditional water right. Id. at 910. When the owner of a conditional water right allows the six-year filing deadline to pass and the water court cancels the water right without notice, the provisions âcreate a logical disconnect.â Id. at 911. We bridged the disconnect with â[t]he only interpretation that provide[d] harmonious effect to the language and legislative intent of both [statutes]â and held that the water court may not cancel a conditional water right without first providing notice. Id. at 912. We concluded that the failure to give notice did not, however, divest the water court of jurisdiction over the case; it merely extended the filing deadline for the reasonable diligence application. Id.

 Â¶18Â Â Â Â Â Â Â  Hence, neither the holding nor the rationale of Double RL supports McKennaâs position. Double RL addressed a unique statutory gap irrelevant to the instant case. Moreover, our statutory analysis in Double RL focused on the legislatureâs concern that rights should not be lost without fair notice. See id. at 911â12. The parties to this case stipulated that the Division of Water Resources mailed notice to McKenna on July 28, 2010 that his Sanchez Ditch water rights were included on the 2010 abandonment list. McKenna timely objected and has engaged in the administrative and judicial abandonment process ever since. He has not alleged any prejudice as a result of the Engineerâs failure to comply with the statutory preparation deadline. Accordingly, this case is similar to Double RL only insofar as both involve issues of statutory construction. In this case, we must decide the effect of a delay under section 37-92-401(1)(a), which states that the Division Engineer âshallâ prepare anÂ abandonment list âno later than July 1,â but which is silent as to the consequences of non-compliance.

 Â¶19Â Â Â Â Â Â Â  McKenna argues that the legislatureâs use of âshallâ and âno later thanâ in section 37-92-401(1)(a) evinces its intent that the preparation deadline be a jurisdictional mandate, such that abandonment proceedings cannot continue absent proof of the Division Engineerâs compliance. McKenna is correct that âshallâ has a âmandatory connotation.â People v. Dist. Court, 713 P.2d 918, 921 (Colo. 1986). However, there is no bright-line test or âformalistic rule of grammarâ by which to distinguish mandatory provisions from those that are merely directory. Danielson v. Castle Meadows, Inc., 791 P.2d 1106, 1113 (Colo. 1990) (quoting N. Singer, Sutherland Statutory Construction, Â§ 25.03, 441â42 (4th ed. 1984)). Rather, legislative intent controls. Id. In the instant case, section 37-92-401(6), which governs abandonment hearings, states that the legislature intended to give the water court âwide discretion in the conduct of such hearings so that the owners of water rights will be protected.â McKennaâs strict-compliance construction of the preparation deadline clashes with this express intent. Interpreting section 37-92-401(1)(a) âin harmony with the overall statutory designâ suggests instead that the preparation deadline is not mandatory as long as the owners of water rights are protected. San Antonio, Los Pinos & Conejos River Acequia Pres. Assân v. Special Improvement Dist. No. 1 of Rio Grande Water Conservation Dist., 270 P.3d 927, 935â36 (Colo. 2011).

 Â¶20Â Â Â Â Â Â Â  In fact, provisions that prescribe the time within which an agency must act are presumed to be directory unless the statute suggests a contrary intent. People ex rel.Â Johnson v. Earl,94 P. 294, 297â98 (Colo. 1908). Accordingly, the court of appeals has held that a sixty-day time limit for the Department of Revenue to hold a hearing before it suspended or revoked a driverâs license was not a jurisdictional mandate. DiMarco v.Â  Depât of Revenue, 857 P.2d 1349, 1350 (Colo. App. 1993) (interpreting section 42-2-123(12), C.R.S. (1992 Cum. Supp.)). Despite the legislatureâs use of âshall,â the purpose of the provision and its relation to the general object of the statute convinced the court that the legislature intended the time limit to be directory. Id. at 1352 (citing In re Application of Rosewell, 454 N.E.2d 997, 999 (Ill. 1983)). The court refused to âassume that the [legislature] intended that an agencyâs procedural mistake should defeat the prime objective of the statuteâ: revoking the driversâ licenses of habitual traffic offenders. Id. In the absence of actual prejudice, the court held that the Department of Revenue did not lose jurisdiction over the proceedings as a result of a delayed hearing. Id. at 1353.

 Â¶21Â Â Â Â Â Â Â  Similarly, section 37-92-401(1)(a), which directs the Division Engineer to prepare the decennial abandonment list at least a month before its publication, does not defeat the water courtâs ability to adjudicate an abandonment case.[8] McKenna invoked theÂ water courtâs jurisdiction when he timely filed a protest to the Division Engineerâs 2010 abandonment list with the court. Thereafter, the Division Engineerâs failure to prove compliance with section 37-92-401(1)(a) did not divest the water court of jurisdiction over the abandonment proceedings, especially because any delay in the preparation of the 2010 abandonment list did not prejudice McKenna.

 Â¶22Â Â Â Â Â Â Â  The water court does not lose jurisdiction to adjudicate water rights because of a procedural mistake that did not harm the owner of the water rights. Hence, we hold that the deadline to prepare the abandonment list under section 37-92-401(1)(a) is directional and is not a jurisdictional mandate.

 IV. Sufficient Evidence Supports the Water Courtâs Finding of Abandonment

 Â¶23Â Â Â Â Â Â Â  The common law has long defined abandonment as nonuse coupled with the ownerâs intent to relinquish his appropriation. See, e.g., Arnold v. Roup, 157 P. 206, 209 (Colo. 1916). The 1969 Act defines â[a]bandonment of a water rightâ as âthe termination of a water right in whole or in part as the result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder.â Â§ 37-92-103(2), C.R.S. (2014). Intent is therefore the crux of an abandonment case. See E. Twin Lakes, 76 P.3d at 921â22; Haystack Ranch, 997 P.2d at 552. A rebuttable presumption of intent to abandon arises from the failure to apply a water right to beneficial use for ten years. Â§ 37-92-402(11); E. Twin Lakes, 76 P.3d at 921. The burden of proof then shifts to the owner to rebut the presumption of abandonment. E. Twin Lakes, 76 P.3d at 921.

 Â¶24Â Â Â Â Â Â Â  The ownerâs self-serving declarations of intent are insufficient to overcome this presumption. Id. at 921â22; see also Beaver Park Water, Inc. v. City of Victor, 649 P.2d 300, 302 (Colo. 1982); Knapp v. Colo. River Water Conservation Dist., 279 P.2d 420, 426 (Colo. 1955). Rather, successful rebuttal requires proof of some affirmative act that negates the ownerâs intent to relinquish his water right, such as repairs to the diversion structure, Haystack Ranch, 997 P.2d at 554, or diligent efforts to sell the water right, City & Cnty. of Denver v. Snake River Water Dist., 788 P.2d 772, 778 (Colo. 1990). Accord E.Â  Twin Lakes, 76 P.3d at 922 (listing factors that may refute the intent to abandon a water right). If such evidence is insufficient or non-existent, however, failure to put water to beneficial use is enough to sustain a finding of abandonment. E. Twin Lakes, 76 P.3d at 922.

 Â¶25Â Â Â Â Â Â Â  In the instant case, the State presented substantial evidence that the Sanchez Ditch water rights had not been applied to beneficial use for decades. From 1982 onward, diversion records for the Sanchez Ditch described its neglected condition with comments like âstructure not usableâ and âwater available, none taken.â The local water commissioner testified that he visited the Sanchez Ditch area at least once a week and never saw water in the ditch or evidence of irrigation around it. An assistant division engineer who testified as an expert in water resource engineering and water rights administration concluded that water was consistently available to the Sanchez Ditch for two months during the irrigation season but was never used. His field inspection in November 2011 revealed a dilapidated ditch with no usable diversionÂ structure. The water court found this evidence sufficient to establish the statutory presumption of abandonment.

 Â¶26Â Â Â Â Â Â Â  McKenna attempted to rebut the presumption with proof that he regularly used the Sanchez Ditch to irrigate his property. He introduced evidence that he dammed the Cucharas with a tire and flooded a portion of the ditch in 2003. Davis testified, however, that the purpose of this venture was to generate pictures of water in the ditch to send to McKennaâs attorney; no irrigation occurred that day. In fact, no other witnesses could corroborate any irrigation through the Sanchez Ditch, and the water court refused to give McKennaâs evidence much weight. Ultimately, the water court found that McKenna, an experienced rancher with access to legal and engineering advice with respect to his water rights, declined to make the repairs necessary to apply water to beneficial use because he opted instead to invest in wells on his property. He then attempted to inveigle the water court with evidence of a staged diversion.

 Â¶27Â Â Â Â Â Â Â  While this evidence shows that McKenna did not want to lose his Sanchez Ditch water rights, it fails to establish that he intended to apply them to beneficial use. The premise of prior appropriation law is that ââ[b]eneficial use is the measure and the limit of an appropriative right.ââ Santa Fe Trail Ranches Prop. Owners Assân v. Simpson, 990 P.2d 46, 53 n.7 (Colo. 1999) (quoting Joseph L. Sax, Robert H. Abrams & Barton H. Thompson, Jr., Legal Control of Water Resources, Cases and Materials 164 (2d ed. 1991)). The law of abandonment recognizes this principle by retiring an appropriation to the stream when its owner no longer intends to apply it to beneficial use. Gardner, 614 P.2d at 360; People ex rel. Danielson v. City of Thornton, 775 P.2d 11, 24 (Colo. 1989)Â (Quinn, C.J., dissenting). In this case, McKennaâs desire to keep his water rights, divorced from any intent to apply the water to beneficial use, is insufficient to overcome the inference of abandonment that arose from decades of nonuse. Cf. CF & I Steel Corp. v. Purgatoire River Water Conservancy Dist., 515 P.2d 456, 458 (Colo. 1973) (â[A] gleam-in-the-eye philosophy is not consistent with the protection and preservation of existing water rights.â). The water court therefore correctly dismissed McKennaâs âchoreographed photosâ because they did not show the application of water to a decreed, beneficial use.

 Â¶28Â Â Â Â Â Â Â  It is the province of the water court to weigh the evidence and measure the credibility of witnesses, and we will not disturb its resolution of factual issues on appeal. Danielson, 775 P.2d at 19. In this case, the record supports the trial courtâs finding that McKenna abandoned his Sanchez Ditch water rights. He never made a legitimate effort to apply the water to beneficial use and could not prove that he ever intended to do so. Consequently, we must sustain the water courtâs finding of abandonment.

 V. Conclusion

 Â¶29Â Â Â Â Â Â Â  We hold that the deadline to prepare the abandonment list under section 37-92-401(1)(a) is directional and is not a jurisdictional mandate. Thus, the Division Engineerâs failure to prepare the abandonment list by the statutory deadline did not divest the water court of jurisdiction over this case. Further, we decline to overturn the water courtâs determination of abandonment because the record supports the conclusion that McKenna intended to permanently discontinue his use of the SanchezÂ Ditch water rights. Accordingly, we affirm the water courtâs judgment of abandonment and remand the case to that court for further proceedings consistent with this opinion.


 [1] The Sanchez Ditch decree was part of the Reed Adjudication (named after the judge who presided over the proceedings), the initial adjudication of irrigation water rights in the Cucharas River and its tributaries. The Reed Adjudication comprises the first seventy priorities on the river, which are considered very valuable in this over-appropriated water district.

 [2] Two of McKennaâs other water rights, the Lucero Ditch and the Sanchez Brothers Ditch, also appeared on the 2010 abandonment list. McKenna does not object to their inclusion on the list in this appeal.

 [3] Section 37-92-401(3) required McKenna to file a written statement of objection with the Division Engineer by July 1, 2011. His objection letter was dated June 27, 2011.

 [4] McKenna asserts that the trial management order and snippets of trial testimony put the State on notice that he was contesting the Stateâs compliance with the prepare-by deadline and therefore preserved the issue for decision. He also suggests that the alleged statutory violation impaired the water courtâs subject matter jurisdiction, an issue that may be raised at any time in the proceedings. Pueblo W. Metro. Dist. v. Se.Â  Colo. Water Conservancy Dist., 717 P.2d 955, 957 (Colo. 1986). Because the water court decided the issue, which presents a purely legal question of statutory construction, we review its conclusion and decline to delve into preservation.

 [5] Diversion records showed that a large (five c.f.s.) water right, slightly junior to the most senior Sanchez Ditch right, has actively diverted water for irrigation over the past fifty years. An assistant division engineer testified that, had McKenna placed a call, this right could have been curtailed to deliver water to the Sanchez Ditch.

 [6] Specifically, the Appellants presented the following issues for review:

 1. Whether the water court erred by concluding that the Division Engineer for Water Division 2 complied with section 37-92-401, C.R.S., et seq., in the abandonment of the Sanchez Ditch.

 2. Whether the water court erred by concluding that the Sanchez Ditch was abandoned.Â 

 [7] This court confronted a similar jurisdictional issue in two cases that interpreted Coloradoâs (now repealed) statutory scheme for certifying the mentally ill. See People in Interest of Lynch, 783 P.2d 848 (Colo. 1989); People in Interest of Clinton, 762 P.2d 1381 (Colo. 1988). In both cases, the respondents claimed that statutory violations deprived the court of subject matter jurisdiction. In Clinton, we held that the failure to appoint an attorney âforthwithâ did not implicate jurisdictional concerns. 762 P.2d at 1386. We concluded that the court in mental health proceedings acquired jurisdiction through the filing of either a petition for a court-ordered evaluation or a certification for short-term treatment. Id. at 1387. Thereafter, the failure to appoint an attorney âforthwithâ was âan erroneous decision not affecting jurisdiction.â Id.; cf. Lynch, 783 P.2d at 851â52 (holding that a violation of the requirement that a hearing be held within ten days after review was requested did not vitiate the continuing subject matter jurisdiction of the court once that jurisdiction was properly invoked).

 [8] Although this case arose from a protest to the Division Engineerâs 2010 Revised Abandonment List, the Department of Water Resources is not involved in every abandonment case. Parties to a water court matter often assert abandonment in battles over the size or existence of a water right that does not appear on the official abandonment list. See, e.g., E. Twin Lakes, 76 P.3d at 921 (complainant seeking declaratory judgment that certain water rights had been abandoned); Haystack Ranch, 997 P.2d at 550 (applicant seeking decree of abandonment). These cases demonstrate that the manner by which an allegation of abandonment reaches the water court is irrelevant to the ultimate issue. In the instant case, the Division Engineerâs actions do not bear on whether McKenna abandoned his Sanchez Ditch water rights.Â 




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Supreme Court Opinions || April 6, 2015


Back