*1226 JUSTICE GABRIEL,
dissenting.
¶27 Relying on broad statements as to the intent of the Innovation Schools Act of 2008 (“ISA”), §§ 22-32.5401 to -111, C.R.S. (2016), the Chief Justice’s opinion holds, purportedly contrary to the court of appeals division below, that the ISA does not preclude a local school board from approving an innovation plan submitted by a “new” innovation school. C.J. op. ¶ l.[1]
¶28 The division, however, did not hold that the ISA precludes a local school board from approving an innovation plan submitted by a “new” innovation school. Rather, the division rejected as contrary to the ISA the contention of the petitioners, Denver School District No. 1 and its board of education (collectively, “DPS”), that the General Assembly intended “new” innovation schools to be exempt from the ISA’s pre-submission approval requirements. Denver Classroom Teachers Ass’n v. City & Cty. of Denver Sch. Dist, No. 1, 2015 COA 71, ¶¶ 41-42, — P.3d -. The division then concluded that a public school or school district cannot develop an innovation plan without complying with the requirements of the ISA. Id, at ¶ 45.
¶29 Moreover, although the Chief Justice’s opinion relies on what it views- to be the intent of the ISA, in doing so, it all but ignores the pertinent provisions of that statute, which undermine the Chief Justice’s conclusions.
¶30 Because (1) the plain language of section 22-32,5-104(3)(f) requires innovation plans to include evidence that a majority of ■the teachers and of the school accountability committee (“SAC”) of the school at issue have consented to the school’s designation as an innovation school, .(2) such approvals were not properly obtained here, and (3) the parties conceded at oral argument that such approvals could be obtained for “new” innovation schools, I respectfully dissent.
I. Analysis
¶31 T begin by noting the applicable principles of statutory interpretation. I then address the pertinent provisions of the ISA. I conclude by applying the plain language of the ISA to the facts presented here and by explaining why I believe the Chief Justice’s opinion is contrary to that statute.
A. . Standard of Review and Principles of Statutory Interpretation
■ ¶32 We review de novo questions of law concerning the application and construction of statutes. Hickerson v. Vessels, 2014 CO 2, ¶ 10, 316 P.3d 620, 623. In interpreting statutes, we must give effect to the General Assembly’s intent. Aetna Cas. & Sur. Co. v. McMichael, 906 P.2d 92, 97 (Colo. 1995). To discern this intent, we interpret statutory terms in accordance with their plain and ordinary meanings. Id. In addition, “we examine the statutory language in the context of the statute as a whole and strive to give ‘consistent, harmonious, and sensible effect to all parts.’ ” Reno v. Marks, 2015 CO 33, ¶ 20, 349 P.3d 248, 253 (quoting Denver Post Corp. v. Ritter, 255 P.3d 1083, 1089 (Colo. 2011)). We will not add words to a statute, nor will we subtract words from it. Turbyne v. People, 151 P.3d 563, 567 (Colo. 2007). In the absence of ambiguity, we apply the statute’s language as written. Id. If, however, a statute is ambiguous, then we may consider the statute’s purpose or policy, as well as its legislative history, to discern the General Assembly’s intent. McMichael, 906 P.2d at 97.
B. Pertinent Provisions of the ISA.
¶33 When it enacted the ISA, the General Assembly declared, among other things, that parents should have input regarding their children’s education and that the faculty employed at a school should have substantial flexibility in determining how to meet students’ needs:
•(a) The constitutional provisions regarding the public education system direct the general assembly to establish a thorough and uniform statewide system of public education, but they also recognize the importance of preserving local flexibility by *1227 granting to each school district board of education the control of instruction in the schools of the school district;
(b) The constitution’s requirement that each school district board of education is responsible for controlling the instruction in its schools is based on the belief that the delivery of educational services must be tailored to the specific population of students they are intended to serve and that the parents of those students should have great opportunity for input regarding the educational services their children receive;
(c) In tailoring the delivery of educational services, it is also important that the persons delivering those services, the principal of the public School and the faculty employed at that school, have the maximum degree of flexibility possible to determine the most effective and efficient manner in which to meet'their students’ needs.
§ 22-82.5-102(l)(a)-(c) (emphasis added). '
¶34 To achieve these goals, section 22-32.5-104(l)(a) provides, “A public school of a school district may submit to its local school board an innovation plan as described m subsection (3) of this section.”
¶35 Subsection (3), in turn, requires, among other things, that the innovation plan submitted to the local school board include evidence that a majority of both the faculty and the SAC consented to the submitted plan:
(3) Each innovation plan, whether submitted by a public school or created by a local school board through collaboration between the local school board and a public school, shall include the following information:
[[Image here]]
(f) Evidence that a majority of the administrators employed at the public school, a majority of the teachers employed at the public school, and a majority of the [SAC] for the public school consent to designation as an innovation school.
§ 22-32.5-104(3) (emphasis added).
¶36 The SAC’s members include the principal of the school or the principal’s designee and at least one teacher who provides instruction at the school; three parents or legal guardians of students enrolled in the school; one adult member of an organization of parents, teachers, and students recognized by the school; and one person who is involved in business or industry in the community! § 22-ll-401(l)(a), C.R.S. (2016).
¶37 As the above-quoted legislative declaration makes clear, the pre-submission consent of a majority of the teachers at the school and a majority of the SAC is intended to ensure that (1) parents will have “great opportunity for input regarding the educational services their children receive” and (2) teachers at the school will have “the maximum degree of flexibility possible to determine the most effective and efficient manner in which to • meet their students’ needs.” § 22-32.6-102(l)(b)-(c).
C. Application
¶38 The material facts here are undisputed.
¶39 The innovation plans that were submitted to the local school board did not include the requisite evidence that a majority of the teachers employed by the schools at issue had consented to those plans. See § 22-32.5-104(3)(f). Nor did the plans include evidence that a majority of the SAC had consented to them. See id.
¶40 Moreover, as the parties conceded at oral argument, it was possible to comply with section 22-32.5-104(3)(f) and to obtain the requisite consents even for “new” innovation schools.
¶41 Accordingly, the plans submitted to the local school board here violated the plain language of the applicable provisions of section 22-32.5-104 of the ISA, namely, (1) section 22-32.5-104(l)(a), which authorizes schools to submit to the board “an innovation plan as described in paragraph (3) of [that] section,” and (2) section 22-32.5-104(3)(f), which, in turn, required the plans to include the above-noted consents from the SAC and the teachers at the school. As a result, in my view, the local school board had no authority to approve such noncompliant plans, in’direct contravention of the ISA’s terms'and stated purposes. See §§ 22-32.5-102(l)(a)-(c), 22-32.5-104(3)(f).
*1228 ¶42 The Chief Justice nonetheless contends, or at least suggests, that (1) the foregoing interpretation of the ISA precludes “new” innovation schools, (2) section 22-32.5-104(3)(f)’s pre-submission consent requirements are merely informational, and (3) those requirements are “directory” and not “mandatory.” See C.J. op. ¶¶ 18-20. I address these assertions in turn.
¶43 First, contrary to the Chief Justice’s suggestion that the above-noted interpretation of the ISA conflicts with the General Assembly’s intent by precluding “new” innovation schools, see C.J. op. ¶ 18, as noted above, both sides in this case conceded at oral argument that “new” innovation schools could obtain the requisite consents if necessary. Indeed, it is the Chief Justice’s interpretation of the ISA, which allows schools to exclude teachers and parents from the-plan development process, that contradicts both the ISA’s expressed purpose and its obvious goal of fostering innovation through collaboration between and among all of the interested parties. See § 22-32.5-102(l)(a)-(c).
¶44 Second, I disagree with the Chief Justice’s suggestion that section 22-32.5-104(3)(f) is merely informational. See C.J. op. ¶ 19. To the contrary, in my view, that provision is a substantive requirement that ensures that teachers and parents will have input into the innovation plan’s development, precisely as the ISA envisions.
¶45 In this regard, I disagree with the Chief Justice’s implicit view that pre-submission consent from teachers and parents is not required for “new” innovation schools because those schools do not yet exist and thus have no parents or teachers. Had the General Assembly wished to except from its pre-submission consent requirements “new” innovation schools, it could have done so expressly. But it did not, and in my view, such an omission was likely intentional because exempting “new” innovation schools from the ISA’s pre-submission requirements would have undermined the collaboration between and among the school’s administration, faculty, and parents that the ISA renders central to innovation schools.
¶46 I likewise disagree with DPS’s assertion that the post hoc teacher approvals that were obtained here established substantial compliance with the ISA’s pre-submission consent requirements. In determining whether strict or substantial compliance with a statute is required, we have considered both the objective that the legislation at issue seeks to achieve and any prejudice to the party against whom substantial compliance is asserted. See Woodsmall v. Reg'l Transp. Dist., 800 P.2d 63, 67-69 (Colo. 1990). Here, for the reasons noted above, the ISA expressly mandates teacher and parent involvement in the development of an innovation plan. See § 22-32.5-102(l)(b)-(c). Indeed, the statute provides that parents should have “great opportunity for input” regarding their children’s education. See § 22-32.5-102(l)(b). Notwithstanding the foregoing requirements, in this case, the schools did not obtain the requisite teacher consent prior to submitting their innovation plans to the school board. Instead, the schools obtained after-the-fact consent from the teachers, apparently as a condition of employment. I perceive no basis for concluding that such post hoc teacher approvals established “substantial compliance” with section 22-32.5-104(3)(f). To the contrary, the schools’ reliance on post hoc approvals allowed the schools to evade the pre-submission teacher involvement that the ISA requires.
¶47 And even if post hoc teacher approval could somehow be .deemed sufficient to satisfy the teacher consent requirement of section 22-32.5-104(3)(f), DPS has not asserted — nor could it assert — substantial compliance as to the requirement of SAC consent. The SACs do not appear to have consented either before or after the plans’ submissions to the school board. Accordingly, the undisputed facts reveal no compliance — substantial or otherwise — with the requirement of pre-sub-mission SAC consent.
¶48 Third, I am unpersuaded by the Chief Justice’s assertion that section 22-32.5-104(3)(f)’s statement as to what an innovation plan “shall” include is “directory” rather than mandatory. C.J. op. ¶ 20. Although “shall” generally has a mandatory connotation, we have recognized that no bright-line test distinguishes mandatory from directory provisions. Protest of McKenna, 2015 CO 23, ¶ 19, *1229 346 P.3d 35, 41. Thus, we have said that legislative intent controls. Id.
¶49 Here, I perceive nothing in the ISA or in its statement of legislative purpose to suggest that section 22-32.5-104(3)(f) was intended to be merely directory. Although the Chief Justice’s opinion relies on its view of the ISA’s overriding purpose of allowing flexibility in innovation, it overlooks the ISA’s equally important goal of ensuring collaboration among and input from all interested parties, especially teachers and parents. In these circumstances, I cannot conclude that section 22-32.5-104(3)(f)’s provisions are merely directory.
¶50 In sum, the Chief Justice’s opinion relies heavily on the purported intent of the ISA, to the exclusion of the plain language of that statute, which, in my view, contradicts the Chief Justice’s conclusions. In doing so, the Chief Justice’s analysis allows schools to avoid the ISA’s requirements of parent and teacher involvement in developing an innovation plan, which, in turn, undermines the collaboration among all interested parties that is indispensable to innovation schools.
¶51 Had the General Assembly intended to create a “new” innovation school exception to the requirement of parent and teacher consent, it could easily have done so. But it did not, and I do not believe that it is this court’s place to read into the statute an exception that is not there, no matter how expedient we might deem such an exception to be. See Turbyne, 151 P.3d at 567 (noting that we will not add words to a statute, nor will we subtract words from it).
II. Conclusion
¶52 For these reasons, I respectfully dissent.
I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE HOOD join in this dissent.

, For clarity and readability, I will sometimes use "Chief Justice" 'herein as shorthand for "Chief Justice's opinion.”