528 P.3d 899
James WOO, Petitioner,
v.EL PASO COUNTY SHERIFF'S OFFICE and Fourth Judicial District Attorney's Office, Respondents.
Supreme Court Case No. 20SC865 Supreme Court of Colorado.
December 12, 2022
Rehearing Denied January 9, 2023
Petitioner James Woo, pro se
Attorneys for Respondents: Office of the El Paso County Attorney, Kenneth R. Hodges, County Attorney, Mary Ritchie, Assistant County Attorney, Colorado Springs, Colorado
Attorneys for Amici Curiae Colorado Criminal Defense Bar and Office of, Alternate Defense Counsel: The Noble Law Firm, LLC, Antony Noble, Lakewood, Colorado
En Banc
JUSTICE SAMOUR delivered the Opinion of the Court, in which CHIEF JUSTICE BOATRIGHT, JUSTICE MARQUEZ, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE BERKENKOTTER joined.
JUSTICE SAMOUR delivered the Opinion of the Court. ¶1 Just last term, we held that, following the dismissal of a criminal case, a trial court retains jurisdiction to rule on a defendant's motion for return of property unlawfully obtained by the government "so long as the motion is filed before the appeal deadline expires." Strepka v. People, 2021 CO 58, ¶ 1, 489 P.3d 1227, 1229. But we cautioned that our holding was narrowly tailored to the circumstances before us. See id. at ¶ 17, 489 P.3d at 1231. Consequently, we expressly left for another day a question that has divided the court of appeals for some time: How does a defendant who has already been convicted and sentenced seek the return of property lawfully seized by the government? Id. at ¶ 16 n.2, 489 P.3d at 1231 n.2. That day has come. A mere eighteen months after Strepka , we turn our attention once again to motions for return of property, an issue that apparently remains in the vanguard of criminal litigation around our state. ¶2 To answer the question we confront here, we build on the foundation we laid in Strepka , the concrete for which was supplied by Dike v. People , 30 P.3d 197 (Colo. 2001). In Dike , we concluded that the county court retained jurisdiction to reconsider its order suppressing the results of a breathalyzer test and dismissing the case "until the time for appeal under Crim. P. 37(a) had expired." Id. at 200. Dike , in turn, found support in People v. Dillon, 655 P.2d 841 (Colo. 1982), where we determined that, "once an appeal has been perfected, the trial court has no jurisdiction to issue further orders in the case relative to the order or judgment appealed from'' unless a statute or rule provides an exception. Id. at 844 (emphasis added). Hence, under Dillon , after an appeal has been perfected, the trial court generally retains jurisdiction only over matters that are not relative to and do not affect the order or judgment on appeal. Id. ; People v. Stewart , 55 P.3d 107, 126 (Colo. 2002) (same); see also Molitor v. Anderson, 795 P.2d 266, 268 (Colo. 1990) ("Courts universally recognize the general principle that once an appeal is perfected jurisdiction over the case is transferred from the trial court to the appellate court for all essential purposes with regard to the substantive issues that are the subject of the appeal.").
¶3 Dillon, Dike, and their progeny dictate that implicit in our holding in Strepka is the notion that a request for return of unlawfully seized property in a criminal case affects the judgment. Otherwise, Strepka presumably would have said that a trial court retains jurisdiction over a criminal defendant's motion for return of property even after the deadline for filing an appeal has expired. It said just the opposite.
¶4 Extending Strepka , we now hold that, subject to the limitations we discuss in this opinion, a defendant may file a motion for return of lawfully seized property following entry of a conviction and imposition of a sentence, so long as the motion is filed: (1) before the deadline to lodge a direct appeal expires or a direct appeal is timely perfected; or (2) once the trial court reacquires jurisdiction following a direct appeal, during postconviction proceedings, or after any appeal related to those proceedings.
¶5 Here, following his conviction and sentence for first degree murder, James Woo brought this civil replevin action seeking the return of certain property that was lawfully seized by the government as part of his criminal case. The trial court ruled, and the court of appeals agreed (on different grounds), that the Colorado Governmental Immunity Act ("CGIA") barred Woo's claim. Woo argues that, if the CGIA precludes his replevin action, he is rendered remediless and the CGIA, as applied to him, violates his rights under the Due Process Clauses of the federal and state constitutions. Because we conclude that Woo has a remedy in his criminal case to recover any property lawfully seized, and because we further conclude that the remedy we identify is constitutionally adequate, the CGIA's bar of this replevin action does not violate his federal and state constitutional rights to procedural due process. Accordingly, we affirm the court of appeals' judgment, albeit on slightly different grounds.1 I. Facts and Procedural History
¶6 In 2016, police officers arrested Woo at the Seattle-Tacoma International Airport in connection with the murder of J.T., who had recently ended their three-year affair. After seizing Woo's luggage at the airport, officers recovered additional property from his apartment in San Francisco. Woo was later charged with first degree murder in Colorado state court. A jury found him guilty, and the trial court sentenced him to life in prison without the possibility of parole. Woo timely appealed his conviction in March 2018.
¶7 While the appeal was pending, Woo's attorney filed a motion in the trial court asking that certain hard drives seized by law enforcement be returned to Woo's family. The motion, which alleged that the hard drives contained personal and financial information, advised that the prosecution objected to the relief requested unless the hard drives were first scrubbed of all explicit images of the victim. According to the motion, Woo was amenable to having the hard drives scrubbed. During a telephone hearing, the court ordered Woo's counsel to supplement the motion by specifying "what items" Woo "wanted from the hard drive[s]" and why those items were being requested. It also asked Woo's counsel to indicate in the supplemental filing whether there were any concerns regarding information protected by the attorney-client privilege. Neither Woo's counsel nor Woo supplemented the motion.
¶8 Some ten months later, on March 22, 2019, the prosecution filed a response opposing the motion.2 It appears that the response was prompted by a letter from Woo requesting that the prosecution return the previously requested hard drives (without the protected images of the victim) and additional items seized by law enforcement: an iPad, cash, headphones, a ring, a computer, a camcorder, several flash drives, and numerous documents. In its response, the prosecution stated that it was unwilling to comply even with Woo's alternative request for scrubbed copies of the hard drives. The prosecution explained that any deleted images could be accessed from the scrubbed copies of the hard drives by someone like Woo with computer expertise. Additionally, the prosecution opposed the motion on the grounds that some of the property sought may have been stolen from Woo's previous employer and, in any event, may be needed later in postconviction proceedings. ¶9 Woo did not reply. Instead, the following month, he brought this pro se civil replevin action against the offices of the sheriff and district attorney in the Fourth Judicial District. "Replevin is a possessory action in which a claimant seeks to recover both possession of personal property that has been wrongfully taken or detained and damages for its unlawful detention." In re Marriage of Allen, 724 P.2d 651, 656 (Colo. 1986). Though Woo did not dispute that the defendants had lawfully seized his property, he alleged that they were wrongfully detaining it. As such, he brought a so-called "replevin in detinet" action.3 ¶10 In his complaint, Woo alleged that certain items collected by law enforcement — including personal documents, jewelry, an iPad, a camera, clothing, cash, credit cards, and a computer–were his, were not used as evidence in his criminal trial, and lacked any evidentiary value for future proceedings. In addition to requesting the return of these items, Woo's complaint sought an award of damages.
¶11 The defendants moved to dismiss Woo's complaint pursuant to C.R.C.P. 12(b)(1), arguing that the trial court lacked subject matter jurisdiction. More specifically, the defendants asserted that Woo had failed to provide notice of his claim within 182 days of discovering his injury, as required by the CGIA. Alternatively, the defendants maintained that they were immune from replevin in detention actions under the CGIA. Woo countered that he had timely provided the required notice. And, contended Woo, if the CGIA precluded this replevin in detention action, then he was rendered remediless and the CGIA, as applied to him, violated his rights under the Due Process Clauses of the federal and state constitutions.
¶12 Without holding a hearing, the district court issued an order dismissing Woo's complaint with prejudice. The court ruled that it lacked jurisdiction because Woo had failed to comply with the CGIA's notice requirement. It added that Woo's motion for return of property should be addressed in his criminal case.
¶13 Woo appealed, and a division of the court of appeals affirmed, though it applied somewhat different reasoning.4 Drawing guidance from our holding in City & County of Denver v. Desert Truck Sales, Inc., 837 P.2d 759, 763 (Colo. 1992), the division determined that a replevin in detention action (including one in which the plaintiff seeks damages) lies or could lie in tort. Woo v. El Paso Cnty. Sheriff's Off., 2020 COA 134, ¶¶ 8-14, 490 P.3d 884, 887-88. Thus, concluded the division, the CGIA bars any replevin action that seeks both the recovery of property lawfully seized by a public entity through its police power and an award of damages resulting from such detention.5 Id. at ¶ 13, 490 P.3d at 887-88.
¶14 But the division's analysis didn't end there because, as mentioned, Woo also claimed that, if the CGIA barred his claim, then the CGIA, as applied to him, violated his federal and state constitutional rights against the deprivation of property without due process of law. The division assumed for the sake of its analysis that the property in question was in the defendants' custody and that it belonged to Woo, which meant that he had suffered a deprivation of a property interest. Id. at ¶ 17, 490 P.3d at 888. Turning to Desert Truck Sales again, the division rejected Woo's constitutional challenge, ruling that he had an adequate remedy: "He could have sought (and, as to some property, he did seek) return of the property in his criminal case." Id. at ¶ 19, 490 P.3d at 888. And, observed the division, longstanding Colorado jurisprudence recognizes a criminal defendant's right to file a motion for return of property with the same court in which criminal charges have been brought. Id.
¶15 The division was unpersuaded by Woo's contention that he lacked an adequate remedy in his criminal case because he'd already been sentenced and the trial court might therefore lack jurisdiction to entertain a motion for return of his property. Id. at ¶¶ 23-24, 490 P.3d at 889-90. Though recognizing that divisions of the court of appeals were divided over whether a trial court retains jurisdiction to hear a post-sentence motion for return of property, the division determined that, even if the trial court in Woo's criminal case no longer had jurisdiction to consider such a motion, barring his replevin in detention action still didn't run afoul of constitutional due process.6 Id. All that's needed under Desert Truck Sales , said the division, is that a post-seizure remedy be available at some point. Id. at ¶ 24, 490 P.3d at 889-90. And here, continued the division, "[s]uch a remedy was available to Woo in the criminal court, at least before he was sentenced." Id. at ¶ 24, 490 P.3d at 890. The fact that the remedy was not "perpetual," opined the division, was inconsequential. Id.
¶16 Still, insisted Woo, barring his damages request in this replevin in detention case violated his due process rights. Id. at ¶ 25, 490 P.3d at 890. But the division was unmoved. It noted that, though the post-seizure statute at issue in Desert Truck Sales didn't allow damages for the property's unlawful detention, our court nevertheless found no due process violation. Id. Continuing on, the division pointed out that parties don't have a constitutionally protected property right to seek damages from the government for their alleged injuries. Id. The division accordingly held that Woo had failed to show beyond a reasonable doubt that the CGIA's bar of this replevin in detention action, including his damages request, rendered the CGIA unconstitutional as applied to him. Id. at ¶ 26, 490 P.3d at 890.
¶17 Woo then petitioned our court for certiorari. And we agreed to review his case.
II. Analysis
¶18 Before we get to the heart of the matter, we clarify what is and what is not before us. Woo does not challenge the division's determination that this replevin in detention action lies or could lie in tort and is thus barred by the CGIA. The sole issue we deal with is whether such bar violates Woo's constitutional rights against the deprivation of property without procedural due process. And that issue hinges on whether Woo has a constitutionally adequate remedy to seek the return of the property lawfully seized by the government in his criminal case.
¶19 We begin our analysis by setting forth the standard of review. We proceed to answer the question we left open in Strepka by concluding that Woo has a post-sentence remedy in his criminal case to seek the return of any property lawfully seized by the government. Next, we determine that the remedy we identify is adequate for constitutional purposes. Thus, we end by holding that the CGIA's bar of this replevin in detention action does not violate Woo's federal and state constitutional rights to procedural due process.
A. Standard of Review ¶20 The constitutionality of a statute is a question of law subject to de novo review. Dean v. People, 2016 CO 14, ¶ 8, 366 P.3d 593, 596. The de novo standard of review applies to both facial and as-applied constitutional challenges. People v. Perez-Hernandez, 2013 COA 160, ¶ 10, 348 P.3d 451, 455. ¶21 "[D]eclaring a statute unconstitutional is one of the gravest duties impressed upon the courts." Coffman v. Williamson, 2015 CO 35, ¶ 13, 348 P.3d 929, 934. For that reason, courts "must presume that a statute is constitutional unless the party challenging it proves its unconstitutionality beyond a reasonable doubt." Id. It follows that a party challenging the constitutionality of a statute bears a heavy burden. People v. Vasquez, 84 P.3d 1019, 1022 (Colo. 2004). ¶22 To demonstrate a procedural due process violation like the one Woo alleges here, a plaintiff must (1) identify a liberty or property interest with which the government has interfered and (2) demonstrate that the procedures attendant to that deprivation were constitutionally insufficient. Ky. Dep't of Corr. v. Thompson , 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). Like the division, we assume for purposes of our analysis that the property Woo seeks belongs to him and is in the defendants' custody. That is, we do not concern ourselves with the first element because we assume that the government took the property sought and that Woo has a legitimate claim of entitlement to it. Our focus, instead, is on the procedures surrounding that deprivation (the second element). "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).
¶23 So, now that he's been convicted and sentenced, does Woo have a post-deprivation remedy available? And if he does, is that remedy constitutionally sufficient? We take up each question in turn, starting with the first one, which we left unanswered in Strepka .
B. Question Left Open in Strepka
¶24 There is no statute or rule that allows a criminal defendant to seek the return of property legally seized by the government.7 Still, Colorado case law is not barren on this issue. Scores of cases from the court of appeals expressly recognize that a criminal defendant may file a pre-sentence motion for return of lawfully seized property, see, e.g., People v. Chavez, 2018 COA 139, ¶ 13, 487 P.3d 997, 999 ; People v. Hargrave, 179 P.3d 226, 228-29 (Colo. App. 2007), and at least one of our cases has implied as much, see People v. Angerstein, 194 Colo. 376, 572 P.2d 479, 481 (1977). Indeed, the parties are on the same wavelength on this point.
¶25 But may a defendant who has already been convicted and sentenced seek the return of property lawfully seized by the government? That's the question we left open in Strepka . Divisions of the court of appeals have taken polar-opposite positions on it for many years. The sticking point in their disagreement is whether a trial court retains subject matter jurisdiction to resolve a motion for return of lawfully seized property after the defendant has been convicted and sentenced.
¶26 As early as 1984, a division held that imposition of a sentence ends a trial court's subject matter jurisdiction in a criminal case except under the circumstances specified in Crim. P. 35 ("Postconviction remedies"). People v. Wiedemer, 692 P.2d 327, 329 (Colo. App. 1984). While the Wiedemer division observed that Colorado jurisprudence appeared to view "[t]he filing of a motion for return of seized property in the same action in which the charges were determined" as "a proper remedy," id. (quoting People v. Rautenkranz , 641 P.2d 317, 318 (Colo. App. 1982) ), it concluded that such a motion must be made prior to imposition of the sentence, at a time when the trial court continues to have jurisdiction over the proceedings, because "[a] request for return of property is not within the scope of Crim. P. 35, which is limited to challenges to a defendant's conviction or sentence" and doesn't "embrace ancillary proceedings." Id.
¶27 In 2018, the division in Chavez jumped on the Wiedemer bandwagon, holding that "once a valid sentence is imposed, apart from the limited claims described in Crim. P. 35, see Wiedemer, 692 P.2d at 329, a criminal court has no further jurisdiction." Chavez, ¶ 13, 487 P.3d at 999. Because Crim. P. 35 doesn't explicitly authorize a motion for return of property, Chavez ruled that a trial court lacks subject matter jurisdiction over such a motion when it is filed after sentencing.8 Id. at ¶¶ 10, 12-13, 487 P.3d at 998-99.
¶28 Interestingly, Chavez followed the example set by Wiedemer despite the fact that a different division had charted its own course eleven years earlier in Hargrave . In 2007, Hargrave held that the trial court had "ancillary jurisdiction, or inherent power, to entertain defendant's post-sentence motion for return of property." 179 P.3d at 230. Borrowing from federal case law, Hargrave determined that ancillary jurisdiction attaches when:
(1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new factfinding proceeding; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated. Id. at 229-30 (quoting Morrow v. District of Columbia, 417 F.2d 728, 740 (D.C. Cir. 1969) ).
¶29 In Morrow , the United States Court of Appeals for the District of Columbia Circuit stated that ancillary jurisdiction existed to allow the city's criminal court to prohibit the dissemination of the defendant's arrest record after the case was dismissed because without such jurisdiction "the court could neither effectively dispose of the principal case nor do complete justice in the premises." 417 F.2d at 732, 738 n.36 (quoting 1 W. Barron & A. Holtzoff, Federal Practice and Procedure § 23, at 94 (Wright ed. 1960) ). Ancillary jurisdiction, noted the court, "is a commonsense solution [to] the problems of piecemeal litigation which otherwise would arise by virtue of the limited jurisdiction of federal courts." Id. at 738 n.36. The chief purpose of ancillary jurisdiction, added the court, "is to insure that a judgment of a court is given full effect." Id. at 740. For that reason, said the court, "ancillary orders will issue when a party's actions, either directly or indirectly, threaten to compromise the effect of the court's judgment." Id.
¶30 Applying Morrow's four-part test, the Hargrave division concluded that a trial court has ancillary jurisdiction to resolve a post-sentence motion for return of property:
The application of requirements (1), (3), and (4) to this situation cannot be questioned. The property was seized as a part of the investigation giving rise to the charges; those parties necessary to the determination of the matter can be properly notified and permitted to participate; and the matter must be determined to protect the integrity of the proceedings. With respect to requirement (2), these matters are, in our experience, normally perfunctory — that is, the property is released to the defendant on the letter of the prosecutor or an order of the court without a hearing. In those rare instances where that is not the case, and this appears to be one of them, the resolution is premised on relatively straightforward legal theories and factual issues requiring only brief proceedings. Hargrave, 179 P.3d at 230. Notably, the division in Hargrave mentioned that the federal courts that have considered the matter have unanimously held that the court that presided over the criminal trial "has ancillary jurisdiction to entertain a postconviction motion for return of property and may conduct the evidentiary hearing if one is required." Id. (collecting cases).
¶31 But in choosing Wiedemer over Hargrave , the Chavez division deemed federal case law on the issue inconsequential. It posited that ancillary jurisdiction has particular relevance in the federal system because federal courts are courts of limited jurisdiction and, but for the doctrine, defendants like Chavez "might be remediless" in federal court. Chavez , ¶ 11 n.3, 487 P.3d at 998 n.3. Since Colorado state district courts are courts of general jurisdiction, however, the division felt that there was "no need" to resort to ancillary jurisdiction. Id.
¶32 This point was not lost on the Hargrave division, though. It explicitly conceded "that ancillary jurisdiction is particularly appropriate in the federal context where the courts are of limited jurisdiction." Hargrave, 179 P.3d at 230. Even so, the division touted the doctrine's application in Colorado "in situations involving state courts of both general and limited jurisdiction." Id. (citing appellate opinions stemming from judgments entered by both general jurisdiction courts and courts of limited jurisdiction). The division further commented that state courts elsewhere have looked to the doctrine of inherent power as an alternative means of permitting trial courts to resolve post-sentence motions for return of property. Id.
¶33 We largely follow the path marked by Hargrave .9 In so doing, we endorse Hargrave's application of the four-part test articulated in Morrow . As we see it, whenever a post-sentence motion for return of property is filed in a criminal case: (1) the property in question will have been seized as part of the investigation giving rise to the charges; (2) the resolution of the motion will usually implicate straightforward, if not perfunctory, proceedings and will not require a substantial factfinding process; (3) litigation of the motion will not deprive any party of a substantial right because the parties necessary to the determination of the matter will be properly notified and will be afforded an opportunity to be heard; and (4) the matter will need to be resolved to protect the integrity of the main proceeding or to ensure that the disposition of the main proceeding won't be frustrated. See Hargrave, 179 P.3d at 229-30 ; see also People v. Nelson, 2015 CO 68, ¶¶ 67-70, 362 P.3d 1070, 1081-82 (Hood, J., dissenting) (approving the court of appeals' reliance on Hargrave , including Hargrave's adoption of Morrow's four-part test, to conclude that the trial court had ancillary jurisdiction to give the defendant a refund of costs, fees, and restitution after her conviction was overturned and she was acquitted at a new trial), rev'd on other grounds , Nelson v. Colorado , 581 U.S. 128, 137 S. Ct. 1249, 197 L.Ed.2d 611 (2017).
¶34 Significantly, trial courts will often be compelled to deny a defendant's pre-sentence motion for return of property because that property may be needed later in the proceedings. Hence, requiring defendants to file a motion for return of property before sentencing would likely be an illusory remedy. So much for Chavez's suggestion that criminal defendants seeking the return of lawfully seized property in state court are not remediless because they may file motions requesting such relief before sentencing. See Chavez, ¶ 13, 487 P.3d at 999.
¶35 The division in Chavez , it is true, opined that a remedy still exists by way of "a civil action seeking equitable relief." Id. at ¶ 14 n.5, 487 P.3d at 999 n.5. But how'd that work out for Woo? This case highlights the challenging hurdles a defendant must clear if he is forced to seek in a civil case the return of property lawfully seized in a criminal case.
¶36 Regardless, as the division in Hargrave aptly pointed out, applying ancillary jurisdiction in this situation furthers judicial economy because "the court, prosecuting attorney, and defense counsel were involved in the criminal proceeding, are aware of the pertinent circumstances, and can make the requisite decisions without the necessity of extended discovery and pretrial delays typically attendant to civil proceedings." 179 P.3d at 230 ; see also Morrow, 417 F.2d at 740 (citing judicial economy as one of the goals of ancillary jurisdiction). We have consistently "stressed that the purpose of ancillary jurisdiction is judicial efficiency." Glover v. Serratoga Falls LLC, 2021 CO 77, ¶ 22, 498 P.3d 1106, 1114 (ruling that the water court properly exercised ancillary jurisdiction over certain non-water claims). In our view, it makes little sense to force a criminal defendant seeking the post-sentence return of property validly seized by the government to bring a separate civil action against the prosecution (and any other pertinent law enforcement agency) in a different court and in front of a different judge. See Crystal Lakes Water & Sewer Ass'n v. Backlund, 908 P.2d 534, 543-44 (Colo. 1996) (explaining that requiring rulings in two different actions to bring about a just and final result approaches absurdity). ¶37 Having said that, a defendant wishing to file a motion for return of property can't do so after the deadline to lodge a direct appeal expires or a direct appeal is timely perfected. Ancillary jurisdiction is of no assistance in those circumstances. That's because the expiration of the deadline to lodge a direct appeal or the timely perfection of a direct appeal divests the trial court of authority to act on matters that affect the judgment on appeal. See Dillon, 655 P.2d at 844. And a motion for return of property is such a matter. See supra ¶ 3. ¶38 Ancillary jurisdiction is not a substitute for subject matter jurisdiction; it is a supplement to subject matter jurisdiction. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (explaining that a claim "must have substance sufficient to confer subject matter jurisdiction on the court" before the court may exercise "[p]endent" or ancillary jurisdiction); Rodriguez Delgado v. Shell Oil Co., 322 F. Supp. 2d 798, 815 (S.D. Tex. 2004) ("[A]ncillary jurisdiction is supplemental to and necessarily dependent on the court's original assertion of subject matter jurisdiction ...."); see also Glover, ¶ 16, 498 P.3d at 1112 (concluding (1) that the water court had proper subject matter jurisdiction because the complaint raised "water matters," and (2) that the court had "ancillary jurisdiction" over "non-water matters" because they "were sufficiently related" to the water matters). Indeed, it is also known as "supplemental jurisdiction." Sandlin v. Corp. Interiors Inc., 972 F.2d 1212, 1215 n.2 (10th Cir. 1992). ¶39 At its core, ancillary jurisdiction is a "judicially developed concept" that rests on the premise that a trial court "acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented." 6 C. Wright et al., Federal Practice & Procedure § 1444, at 373 (3d ed. 2022) (emphasis added). "[A]ll courts, absent some specific statutory denial of power, possess ancillary powers to effectuate their jurisdiction." Morrow , 417 F.2d at 737. ¶40 So, if a trial court already has subject matter jurisdiction over a criminal case, it may exercise ancillary jurisdiction over a defendant's motion to order law enforcement to return his validly seized property (a matter ancillary to the court's subject matter jurisdiction over the prosecution of the charges brought). But if a trial court lacks subject matter jurisdiction over a criminal case, ancillary jurisdiction cannot vest the court with authority to rule on such a motion. ¶41 For purposes of our analysis, it matters not whether the motion is filed pre-sentence or post-sentence. To our way of thinking, a pre-sentence motion to order law enforcement to return validly seized property is no less ancillary to the trial court's subject matter jurisdiction than a post-sentence motion to order law enforcement to return such property. If, as the parties seem to agree, a trial court has ancillary jurisdiction to resolve the former, we fail to see why a trial court would lack ancillary jurisdiction to resolve the latter — provided, of course, that the trial court has subject matter jurisdiction over the case. Where Chavez and other Wiedemer disciples went astray is in incorrectly assuming that, save for ruling on a Crim. P. 35 motion, a trial court is permanently divested of subject matter jurisdiction the moment a defendant is sentenced.10 ¶42 We reiterate that a trial court retains subject matter jurisdiction over a criminal case until the deadline to lodge a direct appeal expires or a direct appeal is timely perfected. And we clarify that even after a trial court is divested of subject matter jurisdiction over a criminal case, it reacquires such jurisdiction following a direct appeal, during postconviction proceedings, or after any appeal related to those proceedings.11 See People v. Jones, 631 P.2d 1132, 1133 (Colo. 1981) ("It is a well-established principle of law that where an appeal has been perfected, the trial court is divested of jurisdiction to issue any further orders .... It is equally well-settled that the trial court's jurisdiction is restored when the appellate court issues its mandate."); Hylton v. City of Colo. Springs, 32 Colo.App. 9, 505 P.2d 26, 27-28 (1973) ("Until the disposition of the appeal is announced, the trial court defers to the appellate court, but when the appellate court announces its decision to affirm, reverse, remand, or modify, then under Colorado law the trial court is automatically reinvested with jurisdiction."). Subject to the limitations we discuss in this opinion, a defendant may file a motion for return of lawfully seized property after the trial court has reacquired jurisdiction.12 C. The Remedy We Have Outlined Is Constitutionally Adequate ¶43 We have now determined that Woo has a post-sentence remedy in his criminal case to seek the return of property lawfully seized by the government. In doing so, we have answered the question we deferred in Strepka . But is the remedy we've identified adequate for constitutional purposes? ¶44 "[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process." Mathews v. Eldridge, 424 U.S. 319, 344, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). When analyzing procedural due process claims, Mathews requires us to look at several factors, including, as relevant here, the risk of an erroneous deprivation of property under the established procedures and the probable value of additional or alternative procedural safeguards. Id. at 335, 96 S.Ct. 893. We are thus compelled to take a deeper dive into the remedy Woo has at his disposal to protect his private interest in the property lawfully seized in his criminal case. ¶45 In advancing a motion for return of property, a criminal defendant must make a prima facie showing that: (1) he owns or is otherwise entitled to possess the requested property and (2) the requested property was seized by law enforcement as part of his case. See People v. Fordyce , 705 P.2d 8, 9 (Colo. App. 1985) ; People v. Buggs, 631 P.2d 1200, 1201 (Colo. App. 1981). Making a prima facie showing is not a rigorous task. A verified motion asserting that law enforcement took the requested property from the defendant at the time of his arrest suffices. Buggs, 631 P.2d at 1201. So does proof that law enforcement seized the requested property from the defendant. Id. ; Hargrave, 179 P.3d at 228. Even the mandatory receipt documenting the property taken by law enforcement from the defendant, see Crim. P. 41(d)(5)(VI), may be enough for a prima facie showing in some cases. ¶46 If a defendant makes the requisite prima facie showing, then the burden shifts to the prosecution to demonstrate by a preponderance of the evidence that: (1) the requested property is the fruit of illegal activity or is otherwise connected to criminal activity; (2) the defendant is not the owner of the requested property or a person entitled to possess it; (3) it would be unlawful for the defendant to possess the requested property; (4) the prosecution may need the requested property later, including after a direct appeal, during postconviction proceedings, or following an appeal from those proceedings; or (5) based on any relevant factors, including the type of case and the nature of the requested property, it would be inappropriate to grant the defendant's motion. See, e.g., Angerstein, 572 P.2d at 480-81 (agreeing with the trial court that the defendants were not entitled to the return of property they had stolen, and holding that "if property is legally seized" and is "designed or intended for use as a means of committing a criminal offense or the possession of which is illegal, there is no right to have it returned"); Fordyce, 705 P.2d at 9 (stating that after a defendant makes a prima facie showing, the burden "shifts to the prosecution to prove by a preponderance of the evidence that the items seized were the fruit of an illegal activity or that a connection exists between those items and criminal activity"); People v. Ward, 685 P.2d 238, 240 (Colo. App. 1984) (affirming the trial court's denial of the defendant's motion for return of property because the defendant's own testimony established that "the seized money was either proceeds from his drug dealings or was money which would be used to pay off substantial debts he owed to his supplier"). ¶47 In response to a motion for return of property, the prosecution may raise any applicable defenses, including laches.13 The prosecution may also oppose such a motion by arguing that it is impermissibly successive or unreasonably untimely. ¶48 In its discretion, the trial court may hold a hearing (evidentiary or non-evidentiary) before resolving a motion for return of property.14 See Hargrave, 179 P.3d at 228 (observing that when a motion for return of property is filed, the trial court may conduct a hearing "if necessary" to determine the property's "appropriate disposition"); People v. Stewart, 38 Colo.App. 6, 553 P.2d 74, 76 (1976) (indicating that, if "there is a dispute as to whether the money seized from a defendant is the fruit of an illegal activity, due process requires that the criminal court hold a hearing in which defendant is allowed to cross-examine witnesses and to present evidence"), aff'd sub nom. on other grounds , Stewart v. People , 193 Colo. 399, 566 P.2d 1069 (1977). Further, the trial court may deny a motion for return of property without prejudice to allow the defendant to refile it after a direct appeal, during postconviction proceedings, or following an appeal from those proceedings. And either party may appeal the trial court's ruling on a motion or refiled motion for return of property. See Buggs, 631 P.2d at 1201. ¶49 To our minds, these procedural safeguards are constitutionally adequate. Recall that, as pertinent here, procedural due process aims to guard against the erroneous deprivation of property. Mathews, 424 U.S. at 344, 96 S.Ct. 893. The procedural safeguards we've identified will ensure that Woo and other defendants like him will not be erroneously deprived of their property by the government. Woo has not shown, nor do we perceive, that additional or alternative procedural safeguards would have "probable value." Id. at 335, 96 S.Ct. 893.
D. Woo's Constitutional Challenge Falls Short
¶50 Because Woo has a constitutionally adequate remedy in his criminal case to seek the return of any lawfully seized property, we conclude that the CGIA's bar of this replevin in detention action does not violate his rights under the Due Process Clauses. Our decision in Desert Truck Sales is instructive on this point. There, Desert Truck Sales brought a replevin in detention action against the City and County of Denver ("Denver") to recover possession of a 1976 Rolls Royce that had been seized and impounded by a Denver police officer for investigation while the car was driven without Desert Truck Sales' consent. 837 P.2d at 761. Desert Truck Sales also sought damages for the detention of the vehicle and the loss of its use. Id. Denver contended, among other things, that the action was barred by the CGIA. Id. Desert Truck Sales countered that a replevin in detention claim was "the only remedy available to protect its due process rights" and that, therefore, the CGIA could not constitutionally bar its claim. Id. at 767.
¶51 Despite concluding that the replevin in detention action was barred by the CGIA, we rejected Desert Truck Sales' constitutional challenge. Id. at 765-68. We explained that Desert Truck Sales had an alternative remedy available because section 42-5-110, C.R.S. (1991), provided "a procedure to obtain the return of the Rolls Royce by presenting proof of ownership" at a post-seizure hearing. Id. at 767 n.9. That the initiation of such a hearing was controlled by the seizing agency was of no moment because, in our view, it didn't transform the taking into a regulatory one or otherwise violate Desert Truck Sales' constitutional right to procedural due process. Id. at 767-68. Besides, we said, we understood section 42-5-110 as granting the party from whom the property was seized the right, upon request, to be heard if the seizing agency failed to demand a hearing. Id. at 768.
¶52 Similarly, here, if Woo wishes to seek the return of the property validly seized by law enforcement in his criminal case, he may file a timely motion with the district court in that case. To be fair, Woo correctly remarks that there is no guarantee the trial court in his criminal case will hold a hearing. But nowhere in Desert Truck Sales did we say that a hearing is required. Nor do we read due process jurisprudence as requiring a hearing in every instance. What's required is the presence of procedural safeguards to prevent the erroneous deprivation of property. And if Woo files a motion for return of property in his criminal case in accordance with this opinion, we are confident that the procedural safeguards we've identified will ensure that he receives due process of law, as guaranteed by the federal and state constitutions.15 Because Woo has a constitutionally adequate remedy in his criminal case to seek the return of his lawfully seized property, his constitutional challenge against the CGIA fails.
III. Conclusion
¶53 For the foregoing reasons, we agree with the division that the CGIA's bar of Woo's replevin in detention action does not render the CGIA, as applied to him, unconstitutional. Even after sentencing, Woo has a remedy in his criminal case to seek the return of his lawfully seized property, and that remedy is adequate for constitutional purposes. Accordingly, we affirm the division's judgment, albeit on slightly different grounds.
1 We granted certiorari to review the following issue:
Whether the court of appeals erred in holding that the Colorado Governmental Immunity Act does not violate petitioner's constitutional right against deprivation of property without due process in barring his replevin claim, even if the criminal court lacks jurisdiction to address a post-sentence motion for return of property.
2 The response was incorrectly dated March 22, 2018.
3 For the sake of clarity, we will avoid the Latin term and simply refer to "replevin in detention."
4 Two months after the division affirmed the dismissal of Woo's replevin in detention action, a different division affirmed his conviction in the criminal case. People v. Woo, No. 18CA0584, ¶¶ 1, 31, 2020 WL 7016831 (Nov. 25, 2020).
5 Subject to specific immunity waivers not relevant here, the CGIA states that "sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." § 24-10-108, C.R.S. (2022). In Desert Truck Sales, 837 P.2d at 765, 767, we established that a replevin in detention action like this one is barred by the CGIA because it lies or could lie in tort and is not subject to one of the statutorily enumerated immunity waivers.
6 At the time the division issued its opinion, we had not yet announced our decision in Strepka .
7 Crim. P. 41(e) is inapposite because it is limited to the return of illegally seized property.
8 In People v. Galves, 955 P.2d 582, 583-84 (Colo. App. 1997), the division didn't cite Wiedemer but nevertheless decided that the trial court lacked jurisdiction over the defendant's motion for return of property after the defendant was found not guilty by reason of insanity and committed to the state's mental health institution. The division reasoned that the trial court's jurisdiction at that point was statutorily limited to the defendant's care, treatment, and release. Id.
9 We need not, and thus do not, pass judgment on whether a trial court has "inherent power" to entertain a defendant's post-sentence motion for return of property. See Hargrave, 179 P.3d at 230.
10 On the other hand, to the extent the division in Hargrave understood "ancillary jurisdiction" as extending a trial court's authority to resolve a post-sentence motion for return of property while the court is, in fact, divested of subject matter jurisdiction, we do not adhere to that vantage point.
11 After a trial court reacquires subject matter jurisdiction, it may lose such jurisdiction again–for example, after an appeal related to such proceedings is timely perfected.
12 In Strepka , there was no direct appeal, so we didn't address situations in which a direct appeal is timely perfected. Nor did we consider whether a motion for return of property may be filed when a trial court reacquires jurisdiction following a direct appeal, during postconviction proceedings, or after any appeal related to those proceedings. Our holding was cabined to the specific circumstances involved there.
13 The defense of laches is established by "a showing that an unconscionable delay in enforcing rights has prejudiced the party against whom relief is sought." Superior Constr. Co. v. Bentley, 104 P.3d 331, 334 (Colo. App. 2004). "The elements of laches are: (1) full knowledge of the facts; (2) unconscionable or unreasonable delay in the assertion of an available remedy; and (3) intervening reliance by and prejudice to another." Id.
14 In Rautenkranz , the division appeared to read our decision in Angerstein as requiring a hearing every time a motion for return of property is submitted. Rautenkranz, 641 P.2d at 318. But we issued no such edict in Angerstein . We remanded that case to the trial court with directions to hold an evidentiary hearing because there was a dispute as to whether the items of property in question were burglary tools. Angerstein, 572 P.2d at 480-81.
15 Woo obviously missed filing a motion for return of property in his criminal case before his direct appeal was timely perfected and the trial court was divested of subject matter jurisdiction. But now that the mandate has issued in his direct appeal and the trial court has reacquired subject matter jurisdiction, Woo can file a motion for return of property, including during any postconviction proceedings and following an appeal related to such proceedings.